[Filed December 21, 1889.]

## F. G. HICKLIN, RESPONDENT, *v.* PATRICK McCLEAR, APPELLANT.

In appeals to the supreme court from judgments of circuit courts, entered upon findings, the findings of fact must be regarded as conclusive of the facts in the case; and the appellate court will only consider, as respects the findings, whether the facts found justify the conclusions of law drawn therefrom, unless it is made to appear from a statement of exceptions that the evidence upon which the findings of fact were made was not, as a matter of law, sufficient to support the same.

When a party, in cases above referred to, desires to raise the question upon appeal, that the circuit court refused to find a material fact, he must show by a statement of exceptions that the evidence in the case warranted such a finding, and that he duly applied by motion to the court to make it, or asked it to be done when the evidence closed.

A refusal by a circuit court to make a finding of fact material in the case, where the evidence establishes it, is a good ground of exception.

Parol evidence is admissible to prove the circumstances under which a deed to real property was made, or to which it relates, or to explain an ambiguity, intrinsic or extrinsic, or to show the situation of the subject of the deed, or of the parties to it, in order to ascertain the premises which it was intended to convey.

In a deed purporting to convey certain lots in a certain block in the town of B., *held*, that it was competent to prove by parol evidence what was understood at the time to be the town of B.; what land it included; the facts concerning the platting of it, and what land was understood to be included in such lots according to such plat,—in order to ascertain what the parties to the deed intended to convey by it.

*Held, also*, that it was not necessary to the validity of the deed that the plat should have been acknowledged or filed for record, or been accepted by the town authorities or the public; and, in case of the loss or destruction of the plat, that parol evidence was permissible to prove its contents, and to show that it was identical with a plat of the town-site, which had been recorded under another name.

Where a land proprietor lays off his land into blocks and streets, makes a plat thereof, and sells lots indicated thereon by reference to such plat, the dedication of the streets thereupon becomes irrevocable. The decision upon this point in *Meier* v. *Portland Cable Railway Co.*, 16 Or. 500, approved.

To constitute adverse possession of land under the laws of this State, so as to divest the owner of his title thereto, or bar him of his right of entry, it must be a visible, notorious and exclusive possession, under a hostile claim of ownership continuing for a period of ten years.

The possession must be of such a character as to afford to the owner the means of knowing of it and of the claim.

The exception to the rule which requires actual occupancy of the land under a claim of ownership, to constitute adverse possession, exists where the party has entered upon a tract of land under a deed or written instrument which describes or indicates its extent, and maintains *pedis possessio* of some portion of it, claiming the whole as his property. In such a case the possession by the party will ordinarily be regarded as co-extensive with the boundaries or limits contained in the deed or writing.

But the exception does not extend to a case where a party owns and is in possession of a distinct parcel of land, and attempts to extend his dominion over an adjoining piece, although he has taken a deed from the original proprietor, including in its description his own land and the adjoining piece. In such a case the party must maintain actual possession of such piece of land, as above indicated, for the period of time prescribed in the statute of limitations, in order to constitute such an adverse possession as will debar the owner of his right.

The plaintiff, in an action to recover the possession of certain real property, consisting of certain lots in the town of B., proved the legal title thereto in himself by mesne conveyance from the United States, and the defendant, in order to establish his ownership in the lots by adverse possession, proved that his grantors, in 1861, entered upon a tract of land including said lots, under a parol agreement for conveyance, which was afterwards made to them, and which described certain lots and blocks in said town of B., including block 12 therein, upon which said grantors were then residing, and where they continued for a long time thereafter to reside; such conveyance did not, however, include the plaintiff's lots. And the defendant further proved that thereafter his grantors received conveyances from the plaintiff's grantors for a tract of land, including said block 12, and the plaintiff's said lots ; but said conveyances were subsequent in time to the execution of the conveyance through which the plaintiff deraigned his title to the lots. The defendant further proved that his grantors, after obtaining said conveyances from the plaintiff's grantors, inclosed said tract of land by a temporary fence, and used it for a length of time as a pasture for their stock ; that they finally removed the fence, leaving the lots open and unoccupied, but claimed ownership thereof, and sold them to defendant, and he entered into actual possession thereof. The proof did not show, however, that there had been an actual continued occupancy of the lots by the defendant and his grantors for the full period of ten years prior to the commencement of the action.

*Held*, that the proof did not establish such an adverse possession as would defeat the plaintiff's right of entry, and that the possession and occupation by the defendant's grantors of said block 12, although they received the said conveyances of the said tract of land, including said block and plaintiff's said lots, could not be regarded as the possession of the latter, and that the exception to the rule requiring an actual possession of real property in order to constitute an adverse possession could not be made applicable in such a case.

APPEAL from a judgment of the circuit court for the county of Multnomah.

The respondent commenced an action against the appel-

lant to recover the possession of certain real property, which is described in the complaint by metes and bounds, and is also referred to therein as lots 1 and 2, block 3, of the town of Brookland. The complaint was in the usual form. The answer set up a title to the premises by adverse possession, which was denied in the reply. The case was tried by the court without a jury, and the following facts and conclusions of law found: (1) That plaintiff has a correct and complete title by mesne conveyances from the United States to lots 1 and 2, in block 3, in the town of Brooklyn or Brookland. (2) That Gideon Tibbets, the donee from the United States of the land in controversy, caused the same, with other lands adjacent, to be platted as a town-site in 1857; that he employed the then county surveyor, Israel Mitchell, to survey and plat said land into such town-site; that the surveyor, contrary to the wish and intent of the proprietor, called the plat so made a plat of the village of "Brookland," and by the direction of said Tibbets he shortly thereafter made another plat identical as to the location of lots, blocks, streets, and alleys, and as to the numbering of such lots and blocks, as the plat of Brookland, and designated such last-named plat as a plat of the village of "Brooklyn;" that both such plats were used indifferently for the purpose of designating, locating, and describing lots and blocks sold in said village of Brooklyn by the proprietor and owners of the town-site and land, and in describing the said lots and blocks in the deed made thereto. (3) That the aforesaid plat, styled "Plat of the village of Brookland," was left with the county auditor for record by defendant J. W. Kern, by the direction of Gideon Tibbets, on the twenty-eighth day of January, 1869, and was copied into the records of deeds of Multnomah county, State of Oregon, but the said map was not entitled to record, because not certified or acknowledged. (4) That subsequently, on the thirtieth day of July, 1870, Tibbets and wife undertook to acknowledge said map, and cause to be recorded their acknowledgment of said recorded plat in said records of deeds of Multnomah

county, Or.; that defendant's grantor, J. W. Kern, at one time constructed a temporary fence of brush and poles, which would include the property in controversy, for the purpose of pasturing his horse and cow thereon, but which was not maintained for any great length of time; that on November 23, 1872, defendant had platted and recorded a plat, styled "Kern's addition to the city of East Portland," which embraced substantially the lands embraced in the plat of Brooklyn, but which materially alters the location of the streets, lots, and blocks, and which was without alleys, and which designated the lots and blocks differently from the other plats; that said last-named plat was made and recorded without any previous vacation of the streets and alleys dedicated by the plat of Brooklyn by any court or person.    (5) That on January 13, 1872, defendant's grantors for the first time acquired color of title to the land in controversy by deed of quit-claim from Tibbets and wife by metes and bounds, describing a tract which would include the land in dispute, and on November 23 of that year took a quit-claim from Louis Love and wife to the same property, but all of these deeds were executed long after plaintiff's grantors had acquired title to the property in dispute.    (6) That neither defendant nor his predecessors or grantors has ever had actual occupancy or possession of the property in controversy adversely to plaintiff for the period of ten years; that defendant's grantors first entered on the tract of land, including the parcels in controversy, in 1861, and under the parol agreement for conveyance from Clinton Kelly, which conveyance was made in 1863, and described certain lots and blocks, of which block 12 was one, in the town of Brooklyn.   They actually occupied block 12, and in the years 1872, 1874, and 1877 received conveyances from Love and Tibbets, for a tract of land, described by metes and bounds, which included said block 12, and also the land in controversy.   After 1872, and until the commencement of this action, said defendant's grantors have continuously occupied, by themselves or by tenants and servants, said block 12, and have

claimed an exclusive ownership of the remainder of the tract described by metes and bounds, but have at no time been in actual possession of the land in dispute, until about —— years ago, when they sold to defendant, who thereafter, and from the —— day of ——, 1884, has actually occupied the premises until the commencement of this suit. The land in dispute is separated from block 12 by several streets, marked out and dedicated by the plat of Brooklyn. The defendant's immediate grantors ·have had constructive possession of the property in controversy for the period of more than ten consecutive years prior to the commencement of this action, unless the existence of the town-site of Brooklyn, within which the residence of defendant's immediate grantors and the lots in dispute are situated, has precluded the application of the right of constructive possession in this case. (7) That the improvements made by defendant upon the property in controversy, consisting of digging a well, clearing the premises, setting out fruit trees, and building a house thereon, has added to the value of said premises in the sum of $200. (8) That the value of the use and occupation of said premises by defendant from the sixth day of October, 1884, to the date of the commencement of this action is $50.

And as conclusions of law, found: (1) The plaintiff is the owner, and entitled to the immediate possession of the property in controversy, described as follows: Beginning at a point 320 feet east and 37 feet south of the corners of sections 2, 3, 10 and 11, in township 1 S., range 1 E. of the Willamette meridian; running thence north 99 feet; thence east 100 feet; thence south 99 feet; thence west 100 feet, to the place of beginning, containing about one-fourth of an acre; the same being part of lots 1 and 2, in block 3, in the town or village of Brooklyn or Brookland, in Multnomah county, Oregon. (2) That by the making of said plat of Brooklyn, the recording of the identical plat under the name of "Brookland," and sale of lots and blocks thereby, the streets and alleys indicated on said plat became and were irrevocably dedicated to the public; and the sub-

sequent platting and recording of a plat by defendant's grantors did in no wise affect or revoke said dedication without the consent of purchasers of blocks and lots under the former plat and of the public; that by the making of said plat of Brooklyn, the recording of the identical plat under the name of "Brookland," and sale of lots and blocks thereby, the lots and blocks so platted were thereby constituted into separate tracts, over which constructive adverse possession of a person who subsequently obtained a quit-claim deed from one without title to the whole of such original tract so platted, describing it by metes and bounds, will not extend; and his possession will be limited to such of said lots and blocks as he actually occupies in a hostile manner, as against the true owner of any of said lots and blocks; that plaintiff is entitled to judgment according to the prayer of the complaint.

And thereafter, the defendant having moved for a new trial, the court, after hearing the argument of counsel, and having duly considered the same, overruled said motion, and upon the request of counsel for appellant made and filed the following additional findings of fact, to-wit: (1) That prior to the year 1870, there had been sold and conveyed by Tibbets and Love about 100 lots in the town of Brooklyn, and they were described in the conveyance as situated in the town of Brooklyn. (2) That there was never any formal acceptance by any public authority, or by the public in any mode, of the dedication of streets in the town plat and site of Brooklyn, nor were such streets actually opened or used as such, or designated on the ground otherwise than by surveyor's stakes, and the tract was covered with brush or timber.

Upon which findings the judgment appealed from was entered.

*J. R. Stoddard* and *E. B. Watson*, for Appellant.

Plat of Brooklyn is null and void.   Ann. Code, § 3060. An owner of an undivided half interest in land cannot plat it as a town-site.   *City of St. Louis* v. *Gas-Light Co.*, 9 S. W.

Rep. 581. Plat of Brooklyn has no existence. Where one claims land under deeds, referring to a recorded plat for a description, and there is no such plat, there is a failure of proof, and this failure is not cured by offering in evidence a plat copied into the records under another name, though it may be in all other respects a copy. Tyler, Ej. 73, 473, 475; *Wilson* v. *Hoffman,* 54 Mich. 246; *Village of Sterling* v. *Pearson,* 41 N. W. Rep. 653. It is not competent to show by oral testimony that the plat offered in evidence is like the plat referred to in the deed except in name. *Hobson* v. *Monteith,* 15 Or. 251, 256. And especially is it incompetent when such testimony comes from a witness who is shown by the records to have acknowledged that she made and recorded the plat offered in evidence as and for the plat of said property. A description in a deed is fatally insufficient as to the whole which does not show the precise tract intended to be conveyed, neither more nor less. Exact identification is essential to preserve the intention of the parties. *Caldwell* v. *Center,* 30 Cal. 540. The record of the Hicklin deeds referring to a recorded plat, there being no such plat, was not notice, constructive or otherwise, to appellant's grantor, so as to bar her title under the bargain and sale deed from Tibbets and wife. *Bailey* v. *Galpin,* (Minn.) 41 N. W. Rep. 1054; *Caldwell* v. *Center, supra.* A dedication under the statutes can only be made by all the owners of the property, and by a substantial compliance with its provisions. *Banks* v. *Ogden,* 2 Wall. 57, 68. A town is as necessary to be a valid dedication of streets for town purposes as the plat itself. *Milarkey* v. *Foster,* 6 Or. 378; *Murray* v. *Menefee,* 20 Ark. 561; *Russell* v. *Dyer,* 40 N. H. 173. Acceptance by the public is essential to a valid dedication, and the sale of lots and blocks with reference to a town-site by an individual is not an acceptance. *Littler* v. *City of Lincoln,* 106 Ill. 353; *Hayward* v. *Manzer* (Cal.) 13 Pac. Rep. 141; *Match Co.* v. *Village of Ontonagon* (Mich.) 40 N. W. Rep. 448; *State* v. *Tucker,* 36 Iowa, 485; *Holdane* v. *Trustees,* 21 N. Y. 474; *Bissell* v. *Railroad Co.,* 23 N. Y. 61, 64. An attempt or offer to dedicate may

be withdrawn or revoked at any time before acceptance by the public. *Baker* v. *City of St. Paul*, 8 Minn. 491 (Gil. 436); *Village of Lockland* v. *Smiley*, 26 Ohio St. 94; *Hamilton* v. *Railroad Co.* (Ill.) 15 N. E. Rep. 854; *City of Belleville* v. *Stookey*, 23 Ill. 441; *McWilliams* v. *Morgan*, 61 Ill. 89; *Wayne Co.* v. *Miller*, 31 Mich. 447; *Field* v. *Village of Manchester*, 32 Mich. 279; *White* v. *Smith*, 37 Mich. 291, 295, 296; *Taylor* v. *City of Fort Wayne*, 47 Ind. 274; *City of Oswego* v. *Canal Co.*, 6 N. Y. 257; *Bridge Co.* v. *Bachman*, 66 N. Y. 261; *Rowland* v. *Bangs*, 102 Mass. 299; *Hobson* v. *Monteith, supra.* Color of title. Tyler, Ej. 872, 874; *Stark* v. *Starr*, 1 Sawy. 20, 25. It matters not that at the date of the conveyances to appellant's grantor the title had already passed from her grantor. *Stark* v. *Starr, supra; Swift* v. *Mulkey*, 14 Or. 59, 64; *La Frombois* v. *Jackson*, 8 Cow. 589, 596; 609. An inclosure not necessary. Tyler, Ej. 892; *Ellicott* v. *Pearl*, 10 Pet. 412, 413, 441, 443; *Ewing* v. *Burnet*, 11 Pet. 41. Residence not necessary. Ang. Lim. §§ 391, 392, 397, 400; *Barstow* v. *Newman*, 34 Cal. 90. Adverse possession is not a question of title. Tyler, Ej. 861, 864, 866; *Ford* v. *Wilson*, 72 Amer. Dec. 137; *Swift* v. *Mulkey, supra.* Constructive possession extends to the boundaries. *Joy* v. *Stump*, 14 Or. 361.

*J. H. Hall* and *E. W. Bingham*, for Respondent.

All that could be required of plaintiff was that the property be designated with reasonable certainty, and the fact that the town was known by two different names could not prejudice the right of plaintiff. Loss of the plat referred to in a deed does not invalidate the deed, and a copy may be used to locate the land. *Land Co.* v. *Tilton*, 19 Fed. Rep. 73; *Penry* v. *Richards*, 52 Cal. 496. A conveyance is not invalidated by the fact that the plat of land referred to in the description is not recorded, or that so much of the description as refers to the plat is incorrect; the land may be identified by parol evidence. *Wiley* v. *Lovely*, 46 Mich. 83; *Moreland* v. *Brady*, 8 Or. 303. At the time of the making of said plats the laws of this State did not require that they

should be recorded, and after the passage of such a law (passed January 20, 1865, St. 1864, p. 925), the plat named "Brooklyn" being lost, the recording of the identical plat under the name of "Brookland" could not avoid the deeds, and it could be used as a copy to locate the premises. By the making of said plat of Brooklyn, and the recording of the identical plat under the name of "Brookland," and the sale of lots and blocks thereby, the streets and alleys indicated on said plat became and were thereby irrevocably dedicated to the public. *Meier* v. *Railway Co.*, 16 Or. 500; *Gregory* v. *City of Lincoln*, 13 Neb. 352; *In re* Pearl St., 5 Atl. Rep. 430. No particular form is requisite to the validity of a dedication; it is merely a question of intention. It may be by survey and plat alone, without any declaration, oral or on the plat, when it is evident from the face of the plat that it is the intention of the proprietor to set apart certain grounds for the use of the public. *Maywood Co.* v. *Village of Maywood*, (Ill.) 6 N. E. Rep. 866; *Dummer* v. *Board*, 20 N. J. Law, 86; *Schuchman* v. *Borough of Homestead*, (Pa.) 2 Atl. Rep. 407. When streets have been dedicated and enjoyed as such, and rights are acquired by either individuals or the public, the former owners are precluded from revoking such dedication. *Grogan* v. *Town of Hayward*, 4 Fed. Rep. 161; *Donohoo* v. *Murray*, 62 Wis. 100; *Cole* v. *Sprowl*, 35 Me. 161; *Sarpy* v. *Municipality No. 2*, 61 Amer. Dec. 221. In order that the rule may apply that a party, who, under a defective title, has entered into actual possession of a part of the land, claiming the whole, may have constructive possession of the whole, the adverse claimant must show that the part not actually possessed has some necessary connection with the other portion, as by use with it or subservient to it. *Wilson* v. *McEwan*, 7 Or. 87; *Thompson* v. *Burhans*, 79 N. Y. 93; *Bailey* v. *Carleton*, 37 Amer. Dec. 190; Washb. Real Property, bk. 3, pp. 197, 198; *Woods* v. *Transportation Co.*, (Ala.) 3 South. Rep. 475; *Pepper* v. *O'Dowd*, 39 Wis. 548. The character of the possession of one who claims to have held adversely under color of title is to be referred to and

determined by the conveyance under which he entered; and one who entered and obtained possession under one deed cannot be heard to say that he entered under another and paramount title, unless he has done something tantamount to a reëntry.    *Watts* v. *Owens*, 62 Wis. 512; *Pepper* v. *O'Dowd*, 39 Wis. 548.    Defendant's grantor, J. W. Kern, could not acquire title to the streets of Brooklyn after the dedication thereof, as against the public by adverse possession.    *Grogan* v. *Town of Hayward*, 4 Fed. Rep. 161; *Hoadley* v. *San Francisco*, 50 Cal. 265; *People* v. *Pope*, 53 Cal. 437; *City of Visalia* v. *Jacob*, 65 Cal. 434; *City of Alton* v. *Transportation Co.*, 12 Ill. 38; *Sims* v. *City of Frankfort*, 79 Ind. 446.

THAYER, C. J.—A number of exceptions were taken at the trial by the appellant's counsel to the rulings of the circuit court upon the admission of evidence on the part of the respondent; but the main question in the case is as to whether the facts found by the court sustain the conclusions of law adjudged thereon.    The respondent claimed title to the premises by deed from B. Killen and wife, bearing date November 28, 1873, and through mesne conveyances from Gideon Tibbets and wife, donees of a tract of land from the United States, which included the land in dispute.    These conveyances, however, described the premises as lots 1 and 2, in block 3, in the town of "Brooklyn," and the records did not show that a plat of any such town had been filed or recorded.    They did, however, show that a plat of the town of "Brookland" had been filed and recorded.    In this condition of the matter, the cousel for the respondent evidently thought it necessary to prove the circumstances surrounding the transaction, in order to render it certain that the premises in dispute were the same premises intended to be conveyed to the respondent by the conveyances referred to.    This he had an undoubted right to do, and parol testimony is clearly competent for that purpose.    Mr. Greenleaf says: "As it is a leading rule, in regard to written instruments, that they are to be interpreted according to their subject matter, it is obvious

that parol or verbal testimony must be resorted to, in order
to ascertain the nature and qualities of the subject to which
the instrument refers.    Evidence which is calculated to
explain the subject of an instrument is essentially different
in its character from evidence of verbal communications
respecting it.    Whatever, therefore, indicates the nature
of the subject is a just medium of interpretation of the
language and meaning of the parties in relation to it, and
is also a just foundation for giving the instrument an
interpretation, when considered relatively, different from
that which it would receive if considered in the abstract." 1
Greenl. Ev. § 286.   Again, that author says: "Indeed, there
is no material difference of principle in the rules of interpre-
tation between wills and contracts, except what naturally
arise from the different circumstances of the parties.    The
object in both cases is the same,—namely, to discover the
intention; and to do this the court may, in either case, put
themselves in place of the party, and then see how the
terms of the instrument affect the property or subject
matter.    With this view, evidence must be admissible of
all the circumstances surrounding the author of the instru-
ment.    In the simplest case that can be put, namely, that
of an instrument appearing, on the face of it, to be per-
fectly intelligible, inquiry must be made for a subject
matter to satisfy the description.    If, in the conveyance of
an estate, it is designated as 'Blackacre,' parol evidence
must be admitted to show what field is known by that
name."    § 287, Id.    The rule, as above laid down, is
declared in this State by positive law.    Section 692 of the
Civil Code, after providing that where the terms of an
agreement have been reduced to writing by the parties it
is to be considered as containing all those terms, and that
thereafter there can be no evidence of the terms of the
agreement, etc., other than the contents of the writing,
except where a mistake or imperfection of the writing is
put in issue by the pleadings, or where the validity of the
agreement is the fact in dispute, declares: "But this sec-
tion does not exclude other evidence of the circumstances

under which the agreement was made, or to which it relates, as defined in section 696 (Civil Code), or to explain an ambiguity, intrinsic or extrinsic, or to establish illegality or fraud. The term 'agreement' includes deeds and wills, as well as contracts between parties." In case of a deed to real property, it has always been competent to prove the facts and circumstances surrounding the transaction, in order to ascertain the premises intended to be conveyed. The evidence, therefore, as to what Tibbets did in platting the town-site, and in selling lots therein, of there being two plats, and of their similitude in fact, was eminently proper, and the objections thereto must be regarded as highly technical. Nor did it matter anything whether such plat was ever acknowledged or filed for record; its contents could be proved by parol testimony in event of its loss or destruction. In view of this rule the circuit court properly admitted the said evidence, and its findings of fact thereon must be regarded as conclusive upon this appeal. Hence nothing remains to be considered except the question before suggested,—whether said findings justified the conclusions of law drawn therefrom. When an action at law is tried before a circuit court without a jury, its first duty is to find from the evidence the facts in the case. It must then determine the law as applicable thereto, which becomes decisive of the right of the parties to the action.

In this case the circuit court found, in effect, that the respondent had a correct and complete paper title to the premises in dispute, by mesne conveyances from the United States, and that the appellant was in possession of the same, claiming ownership thereof. These facts would entitle the respondent to a judgment for the recovery of the possession of the premises, unless other facts found by the court would bar him of his right. It must be understood, however, that this court can only consider those findings which the record shows that the circuit court actually made. Whether or not that court was justified by the weight of evidence in making the findings, this court

cannot consider. Nor can it consider any failure or neglect on the part of the circuit court to make other findings from the evidence before it, which would be material in the case, unless the point is specially made and brought here. If the findings of the circuit court in such a case are wholly unsupported by the evidence, and that fact is made to appear by a bill of exceptions purporting to contain all the evidence upon the point, this court would disregard the findings. And should the circuit court fail or neglect to make a material finding upon the evidence before it, and the bill of exceptions showed that the court was specially requested to make the finding, and it had refused to do so, this court would doubtless deem an exception to such refusal well taken.

I am induced to make these suggestions because they involve an important point in practice, to which the attention of the profession should be called. The respondent evidently acquired a good legal title to the premises in question under the conveyances referred to, and. the burden of proving that he has since been divested of it;. or barred from asserting it, is upon the appellant. The only ground upon which it can be claimed, with any semblance of reason, that the respondent is precluded from recovering possession of the premises, is that he, his ancestor, predecessor, or grantor, was not seised or possessed of the same within ten years before the commencement of the action; and in order to establish that fact it must appear that the appellant, and those under whom he claims, were, during that time, in the visible, notorious, and exclusive possession, under a claim of ownership. The possession must have been of such a character as to afford the respondent the means of knowing it, and of the claim.

It can hardly be pretended that any of the findings of the circuit court establish any such possession of the premises by the appellant and his grantors as above indicated. The court found, it is true, that the appellant's grantor, J. W. Kern, at one time constructed a temporary fence of brush. and poles inclosing the said premises, for the pur-

pose of pasturing his horse and cow thereon, but which was not maintained for any length of time; and that on the twenty-third day of November, 1872, he had platted and recorded a plat styled "Kern's addition to the city of East Portland," which embraced substantially the lands embraced in the plat of Brooklyn.

It also appears from the said findings that the appellant's grantors first entered on a tract of land, including the premises in controversy, in 1861, under a parol agreement for conveyances from Clinton Kelly, which conveyance was made in 1863, and described certain lots and blocks, of which block 12 was one, in the town of Brooklyn; that they actually occupied block 12, and in the years 1872, 1874 and 1877 received conveyances from Love and Tibbets for a tract of land, described by metes and bounds, and which included said block 12, and also the land in controversy. After 1872, and until the commencement of this action, the appellant's grantors have continuously occupied, by themselves, or by tenants and servants, said block 12, and have claimed an exclusive ownership of the remainder of the tract described by metes and bounds; but have at no time been in actual possession of the land in dispute until about —————— years ago, when they sold to appellant, who thereafter, and from the ——— day of ———, 1884, has actually occupied the premises until the commencement of the action; that appellant's immediate grantors have had constructive possession of the premises in controversy for the period of more than ten consecutive years prior to the commencement of the action, unless the existence of the town-site of Brooklyn, within which the residence of appellant's immediate grantors and the lots in dispute are situated, has precluded the application of the right of constructive possession in the case.

This is the substance of the facts upon which it is attempted to maintain the appellant's defense of adverse possession. They amount to about this: The appellant's grantors purchased certain lots and blocks in the town of "Brooklyn," as it was termed, and took up their residence

on one of the blocks purchased.   They then obtained deeds from the respondent's grantors to a tract of land, which included said lots 1 and 2, in block 3, but which deeds were subsequent to the conveyances under which the respondent claims title.   The appellant's grantors, however, inclosed the tract to which they had received the deeds by a temporary fence, for the purpose of pasturing their stock therein; but they subsequently removed the fence, and left the respondent's lots lying open, although they assumed to be the owners thereof for more than ten years, and deeded them to appellant in 1884, who entered upon and took actual possession of them.   The circuit court did not consider that the occupancy of the premises by the appellant and his grantors had been sufficient to constitute adverse possession; that, their being a separate and distinct parcel of land from block 12, where the appellant's grantors resided, the latter could only at most have had a constructive possession thereof, which, under the circumstances, was not sufficient.   It is well understood that there is an exception to the rule which requires a party to be in the actual occupancy of the land under a claim of ownership in order to constitute an adverse possession of it. The exception applies to cases where the party enters upon a tract of land under a deed or written instrument which defines its extent.   There the actual possession of the party of a part of the tract will ordinarily be regarded as the possession of the whole of it.   The law will deem the possession of the party in such a case to be coëxtensive with the boundary of the tract, or the limits thereof, contained in the deed or writing.   But in this case the condition of affairs was entirely different.   The appellant's grantors were owners, and in possession of said block 12, when they received the deeds to the tract before referred to.   They made no new entry upon the land after receiving the said deeds, but continued to reside upon said block 12 as they had theretofore been doing.   They did no overt act likely to impart notice to the owners of lots 1 and 2, block 3, that they claimed the ownership thereof; but

merely attempted to extend their dominion over said lots, and appropriate them without any hostile demonstration. How could the owners of lots 1 and 2, block 3, have known that said grantors intended to claim the lots as their own property from any act which they did? Inclosing them, with other adjacent land, by a pole and brush fence, for a temporary pasture, was not calculated to give notice of that character. The lots were probably open commons, and the owners of them would not be likely to make any objection to their use for such purpose by any adjoining neighbor. I do not think, therefore, that the possession by the appellant and his grantors, as found by the court, was sufficient to bar the respondent's recovery, irrespective of the fact that the said lots constituted a separate and distinct parcel of land from that of said block 12. If I am correct in this, it is unnecessary to consider whether the town-site of Brooklyn had an existence or not. The counsel for appellant contended very earnestly at the hearing that there was no such town-site; that it was never accepted by the town proprietors or by the public, but was superseded by "Kern's addition to the city of East Portland." It became important for said counsel to maintain that position, in order to claim the benefit of a constructive possession of the lots in question under the holding of the circuit court. Their argument was that such town-site never existed. If they are correct in that view, then all the acts of Gideon Tibbets in platting the land, having a plat thereof made, and selling lots and blocks by reference thereto, were a nullity. I had always supposed that a proprietor of land had a right to lay it off into lots, blocks, and streets, and to designate it as a town-site; and that when he sold lots and blocks by reference to the plat of such town-site he thereby irrevocably dedicated the streets to the public. It would be a strange doctrine, it seems to me, if a land owner were allowed, after platting his land as mentioned, and after selling a number of the lots and blocks so laid out, to annul the whole affair. Tibbets could have done that, if his grantor, Kern, can do what the

counsel seems to claim he has accomplished. It is sufficient to add that such a doctrine should never be sanctioned by a court of justice.

We had occasion to examine this subject in *Meier* v. *Railway Co.*, 16 Or. 500, and we still adhere to the principle. there announced.

The judgment appealed from will be affirmed.