Argued 23 March, decided 4 April, 1904.

## ASTORIA RAILROAD CO. v. KERN.

[76 Pac. 14.]

SHIPPING—NEGLIGENT INJURY TO BRIDGE—JURISDICTION.

1. Under B. & C. Comp. § 4627, providing that the owner of any vessel which, when within the waters of the State, has through negligence caused injury to bridges, etc., shall be liable for damages resulting, and that the person so injured may recover the same in an action at law in the circuit court of the county in which such vessel may be found, the state courts have jurisdiction of an action for damages to a bridge trestle constructed on piles driven in the bed of a navigable river of this State, between high and low tide.

REMOTENESS OF EVIDENCE.

2. In an action by a railroad for damage to its bridge trestle, caused by defendant's barges breaking loose from their moorings in a river near the ocean, and drifting against the trestle, the testimony of a witness, who was some fifteen or sixteen miles seaward, as to the character of the storm that caused the barges to break loose, is admissible.

SUFFICIENCY OF EVIDENCE TO SUPPORT FINDINGS BY COURT.

3. The weight of evidence in support of the findings of a judge before whom a case has been tried without a jury, will not be considered on appeal, if any competent evidence was received.

From Clatsop: THOMAS A. McBRIDE, Judge.

This is an action by the Astoria and Columbia River Railroad Company against Daniel Kern for damages. The plaintiff is the owner and engaged in the operation of a railway, that portion of its track within the eastern and western limits of the City of Astoria being constructed upon piles over and along the shore of the Columbia River, between high and low water. For cause of action it alleges, in brief, that on the 25th day of December, 1901, the defendant, being the owner of and having in his possession three large barges, anchored the same in the Columbia River, north of and a short distance from plaintiff's trestle; that it was the duty of defendant to anchor them securely,

and guard them so as to prevent their drifting or being carried by the wind and tide that prevail in the locality during that season of the year, but, in disregard of such duty, he negligently secured the barges and each of them with weak, rotten, and insecure ropes, knowing the same to be unsuitable and insufficient, and failed and neglected to leave the same in charge of any person, or to have any one look after, watch, or guard them or either of them, by reason whereof the barges, and each of them, broke away from their moorings, and drifted and were driven by the wind and tide upon plaintiff's trestle, to its damage in the sum of $1,000. The answer controverts these allegations, and sets up a further defense, in effect, that defendant was engaged in dredging the channel of the Columbia River under the direction of a government engineer; that in doing the work it became and was necessary to use barges, and to anchor them at or near the point designated in the complaint; that he securely anchored them, and caused the same at all times to be watched and guarded, so as to prevent them from drifting or being carried away by the wind and tide, but that at the time mentioned in the complaint an unusual, extraordinary, and violent storm suddenly arose, accompanied by an unusual, high, and extraordinary wind and tide, of such force that, notwithstanding the precautions taken, the barges dragged their anchors, and were driven and carried to and upon plaintiff's trestle, damaging it not to exceed $400; and that said damage was due solely to the unusual and extraordinary character of the storm and tide then prevailing, for which defendant is not liable.

The case was tried before the court, a jury having been waived, which made and filed findings of fact and conclusions of law. Those that are material here are findings of fact Nos. 5 and 6. Nos. 1, 2, and 3 accord with the allegations of the complaint. No. 4 is in accord with the allega-

tions of the answer as to defendant's being engaged at the time in dredging the channel of the Columbia River, that in performing such work it was necessary to use the barges in question, and that at the time stated defendant had then anchored in the position designated.   No. 5 finds that on the night of December 25th there arose a severe wind-storm, but such as has frequently occurred in the locality during that season of the year, and such as it became and was the duty of the defendant, in anchoring his barges and scows, to provide against; that he did not securely or properly anchor the same, but, on the contrary, he fastened them with old, weak, rotten, and insecure ropes; that it was customary in that port to provide watchmen upon barges to look after their moorings, and generally to watch and care for such vessels, and it was the duty of defendant to have had on each of said barges at the time a watch-man, commonly called an "anchor watch"; that defendant had none such on board, but that some of his employés were sleeping on one barge only; that on the night in question all the barges  except one broke away from their anchorage, the ropes with which they were tied parting by reason of being rotten and insufficient, and drifted upon the railroad trestle aforesaid.  The sixth finds that defendant was negligent, and did not use ordinary care in providing suitable rope and chain with which to anchor the barges, and in fastening the same with old, weak, and rotten ropes, and in failing to provide a watch on board of each barge while at anchor.  The seventh and last finding is concerning the amount of damages sustained.  Judgment having been entered upon these findings, and the conclusions of law rendered in pursuance thereof, the defendant appeals.                                              Affirmed.

For appellant there was a brief over the name of *Cotton, Teal & Minor*, with an oral argument by *Mr. Wirt Minor*.

For respondent there was a brief over the name of *Fulton Bros.*, with an oral argument by *Mr. Geo. C. Fulton.*

MR. JUSTICE WOLVERTON, after stating the facts in the foregoing terms, delivered the opinion of the court.

1. Preliminarily, it is urged that plaintiff cannot maintain the action because the trestle damaged is constructed upon piles driven in the bed of a navigable river between high and low tide. The action, however, is given by statute (B. & C. Comp. § 4627), if it may not be otherwise maintained.

2. Numerous assignments of error are noted to the admission of testimony in support of the plaintiff's cause of action, as (1) in admitting the testimony of G. Holzhay as to the manner in which the barges were moored; (2) in admitting that of D. B. Johnson touching the velocity of the wind, and of E. A. Peterson to show the force and velocity thereof after 1 o'clock of the morning of December 22d; (3) in admitting the testimony of several witnesses touching the condition of the lines with which the scows were moored; (4) in admitting the testimony of others as to the necessity of maintaining watchmen upon the vessels; and (5) in admitting the testimony of Daniel McVicker as to the character of the storm. It may be said, generally, of these assignments, without examining them in detail, that the testimony to which they relate was all material and competent, some of it being more or less remote, but not to such an extent as to render its admission prejudicial. McVicker's testimony touching the character of the storm is perhaps more remote than any of the rest. He said, in effect, that the storm was a heavy one—a severe gale; that the wind shifted once in awhile to the west and northwest, and sometimes was severe; that such a storm does not happen very frequently; that it generally blows from some other direction; that a storm of that kind

occurs almost every winter, but that the one in question might have been a little severe; and that, on the night of the 25th of December, when the barges went into the trestle, he was outside of the Columbia River, some 15 or 16 miles away. The storm seems to have come from seaward, and that of which the witness speaks was in all probability the same as that which caused the barges to break from their anchorage. The difference in position might have made some difference in the type of the storm, but it is very likely that it was not so great as to render the testimony wholly irrelevant. We cannot say, therefore, that it was error not to reject any of the testimony to which objection was interposed.

3. Defendant's counsel next urge that there is no evidence to support the findings of fact in two particulars material to the plaintiff's cause of action, namely, that defendant neglected to leave the barges in charge of watchmen, and that they were insecurely anchored or fastened; and in a third particular relating to the defense touching the manner of the storm that caused the vessels to break from their moorings and drift upon plaintiff's trestle. The findings of fact of the trial court are conclusive upon us, if there was some competent evidence offered and admitted at the trial reasonably tending to their support, and, "whether or not that court was justified by the weight of evidence in making the findings, this court cannot consider": *Hicklin* v. *McClear*, 18 Or. 126, 137 (22 Pac. 1057, 1061); *Bartel* v. *Mathias*, 19 Or. 482 (24 Pac. 918); *In re Fenstermacher* v. *State*, 19 Or. 504 (25 Pac. 142); *State* v. *Myers*, 20 Or. 442 (26 Pac. 307). The evidence, as it relates to the defendant having a watchman in charge of the barges at the time, is really not much in conflict, and is in apt support of the findings. One watchman was usually provided for all of the barges, but not even one was aboard on that occasion. There were three men, however, on what

is designated as the "drill scow," but they seem not to have been charged with the duties of watchmen, so that there can be no further inquiry here upon the subject.

Touching the manner of mooring the vessels, and with what kind of ropes and instrumentalities they were secured, there is much conflict. The defendant's witnesses show that much care and circumspection were observed in this respect, and that new and secure ropes were used, and all that were necessary to provide against the influence and force of the usual extremes of the weather and tides that might be expected at that time of the year; while upon the other hand it must be admitted there was much testimony tending to show that the ropes were rotten and weak and wholly insufficient. It is argued, however, that plaintiff's witnesses had not the means or facility of examining and ascertaining the quality and condition of such ropes and fastenings that the defendant's had, but that goes to their credibility, and is for the trial court in determining the weight of evidence. We are not permitted to examine it here for that purpose. Unquestionably, there is ample evidence in the record upon which the findings could reasonably be based, so that it is not within our province to consider it further. The testimony concerning the stress of weather is of the same character, and we are concluded by the findings in this as in the other particulars.

Based upon these considerations, the judgment of the trial court will be affirmed, and it is so ordered.

AFFIRMED.

------------

Decided 28 March, rehearing denied 13 June, 1904.