Argued January 21, decided February 3, 1914.

## BANK OF KENTON v. SUN DIAL RANCH.

(138 Pac. 455.)

**Appeal and Error—Review—Findings by Court.**

1.    In a law action tried without a jury, the findings of the court have the sanctity guaranteed to a verdict by Article VII, Section 3, of the Constitution, as amended November, 1910, providing that in law actions the right of jury trial shall be preserved, and no fact tried by a jury shall be otherwise re-examined, unless the court can affirmatively say there is no evidence to support the verdict.

> [As to weight in appellate court of findings of court as to amount of damages, as compared with verdict of jury, see note in Ann. Cas. 1913C, 178.]

**Bills and Notes—Actions—Sufficiency of Evidence.**

2.    In an action on the note of a corporation, evidence *held* to sustain findings that the defendant and its representative had executed a bill of sale of sheep to plaintiff on condition that they should be sold, and the proceeds applied to pay, among other things, the note of which the note in suit was a renewal, but that the sheep were sold by the representative of defendant, and with its consent deposited with plaintiff to his personal credit, and it was agreed that defendant's indebtedness should be paid from other sources.

From Multnomah: GEORGE N. DAVIS, Judge.

This is an action by the Bank of Kenton, a corporation, against the Sun Dial Ranch, a corporation.    The Circuit Court gave a judgment in favor of plaintiff, and the defendant, being dissatisfied therewith, appeals.                                      AFFIRMED.

For appellant there was a brief over the names of *Mr. Hall S. Lusk* and *Messrs. Dolph, Mallory, Simon & Gearin,* with an oral argument by *Mr. Lusk.*

For respondent there was a brief over the names of *Mr. C. A. Hart* and *Messrs. Carey & Kerr,* with an oral argument by *Mr. Hart.*

Department 2.   MR. JUSTICE MCNARY delivered the opinion of the court.

This is an action to enforce the payment of a negotiable note for $3,000, executed and delivered by the Sun Dial Ranch to the Bank of Kenton on the 5th day of November, 1911.   The activities of the defendant are directed along the stock and ranch business.   One Wm. Shepherd was the representative of defendant in the buying and selling of sheep, receiving a salary therefor of $500 a month, payable out of the profits of the enterprise.   In the conduct of the business, Shepherd opened an account in his own name with the bank, through which the financial transactions of the defendant were carried on, drawing drafts and checks against this account to pay for sheep which he bought, and likewise depositing to the credit of the account moneys derived from the sale of sheep.

By reason of Shepherd making overdrafts upon the bank, he and defendant became indebted to plaintiff. Defendant, on the 10th day of October, 1910, gave its note to the bank for $3,000; Shepherd at a time subsequently executing and delivering to plaintiff his personal note for $2,500.   These two obligations were carried by the bank until a year following, when a statement of the account with Shepherd indicated that, in addition to the indebtedness evidenced by the two notes, he had overdrawn the account in the bank to the extent of $3,416.15.

In response to a demand of plaintiff's that an adjustment be made, Shepherd, with the concurrence of defendant, on October 18, 1911, executed to the bank the following instrument:

"I, William Shepherd, hereby bargain, sell, and convey a certain lot of sheep known as the Gabel sheep, consisting of about 3,200 head, more or less, also about 370 other sheep, now at the Sun Dial Ranch near Fairview, Oreg., for one dollar and other valuable considerations to the Bank of Kenton, an Oregon corporation of Portland, Or.

"[Signed]     WM. SHEPHERD.     [Seal.]

"Witnesses:

"J. V. BURKE.

"R. N. THATCHER.

"Dated this 18th day of October, 1911.

"We hereby consent to the above assignment with the understanding that the proceeds of the sale of the above-described sheep shall be applied as follows: First, to the payment of the overdraft and notes of Wm. Shepherd, amounting to about $5,916.15; second, to the payment of the note and interest of the Sun Dial Ranch, amounting to $3,000.00; third, to the payment of the charges of the Sun Dial Ranch for care and pasturing of said sheep. The remainder, if any, to be held for the benefit of Wm. Shepherd and the Sun Dial Ranch as their respective interests may appear.

"[Signed]     SUN DIAL RANCH,
"By H. C. CAMPBELL, Pres."

Subsequently, and on November 5, 1911, defendant, upon the request of plaintiff, executed the note forming the groundwork of this action, and at the same time taking up the original note under date of October 10, 1910.

Further, there is evidence to support the statement that the officers of the Sun Dial Ranch, agreed with plaintiff to waive the provisions of the bill of sale, so that the money derived from a disposal of the sheep would not be required to be applied to the payment

of the note in question, but would be obtained from an independent source.

Counsel for defendant concede that but one question is here presented for determination, namely: If the testimony discloses that the money paid into the bank, subsequent to the execution of the bill of sale, exceeded the amount of all the indebtedness, including the note for $3,000, then it must follow that the obligation has been paid, and the judgment should be reversed. The position of the plaintiff's counsel is that, upon the waiver of the terms of the bill of sale, all the money derived as a result of the sale of the sheep was deposited in the bank to Shepherd's account, and thereafter drawn upon by him in payment of his and defendant's obligations, apart from the note of $3,000, and that such findings by the trial court have, if supported by any competent evidence, the finality of the verdict of a jury.

1. This cause was tried by the court without the intervention of a jury, thereby giving the findings of the trial court the sanctity guaranteed to the verdict of a jury by Article VII, Section 3, of the Constitution of this state, as amended at the general election of November, 1910, which provides: "In actions at law * * the right of trial by jury shall be preserved and no fact tried by a jury shall be otherwise re-examined in any court of this state unless the court can affirmatively say there is no evidence to support the verdict. * * " Laws 1911, p. 7. Therefore, upon an appeal from a judgment in a law action tried by the court without the assistance of a jury, this court will refrain from re-examining any fact found by the inferior tribunal, unless it affirmatively appears from the record that there is no evidence to support the findings: *Rehfield* v. *Winters*, 62 Or. 299 (125 Pac. 289); *Sun Dial Ranch* v. *May Land Co.*, 61 Or. 205 (119 Pac. 758); *Astoria R. R. Co.* v. *Kern*, 44 Or. 538 (76 Pac. 14).

This statement of the law as a guide, it will be necessary to search the record to ascertain whether the case measures up to the requirements of the organic law.

2. While differing with the conclusions of the court, it is admitted by counsel for defendant that there was competent evidence introduced at the trial conducing to show that the terms of the bill of sale given by Shepherd to plaintiff had been waived by the officers of the bank. So the question resolves itself into this: Was the note sued on paid, either directly, or by the deposit of funds, the application of which should have been made to the liquidation of the debt in controversy? The testimony is uncontradicted that Shepherd carried the defendant's account at the bank in his own name, and checked actively against the account, at times depleting the funds on deposit by effecting overdrafts of considerable portions. On some occasions the funds would be checked to meet the personal obligations of Shepherd, and at other times the demands of defendant.

Mr. Burke, cashier of the bank, testified that the money derived from the sale of the sheep identified in the bill of sale was placed in the bank by Shepherd to his own account. Upon this point, we quote from the witness:

"Q. The money realized out of the sale of those sheep was handled in what way?

"A. The money came in by Mr. Shepherd's deposit, as he would sell them along with other money; we didn't pay much attention to the bill of sale after we had found out the true situation as to all the money that had to be paid out in addition to what was owing. As a matter of fact, I was being owed for the whole $6,000, and Shepherd was bringing in money then every day or two for that matter."

At another time the cashier testified that it was agreed the note under consideration should be liquidated by the sale of sheep other than those described

in the bill of sale.   On that phase of the case, the testimony is as follows:

"A. Mr. McGaw and Mr. Campbell came in there—they were sitting right in the front window, and I told them then that there wasn't enough money to pay for those sheep, this Patterson bunch of sheep that we had paid for from those Gabel sheep—that we had paid the whole $8,000 ourselves, and that, after everything was in, the account would have shown an $8,000 overdraft in addition to all the notes.   And in come Mr. Shepherd from the stockyards—it was a lucky thing that he did come, as I wanted to see them there together.   It was as Mr. Swigert says—it was a mighty hard proposition to find Mr. Shepherd any time, and just then Mr. Shepherd came in, and I says to him, 'Come in, Shepherd'; and he came in, and we were all there, and talked the matter over, and while they were there I made this declaration, I says, 'Now, Campbell, I want you to distinctly understand'—and I remember exactly the words I used—'that there is no money here to pay for that note.'   Then he turns to McGaw, and he says, 'There is some bucks out there with about 300 ewes'; and then Mr. Campbell turned to Mr. Shepherd, and he says, 'Shepherd, will you sell those ewes, and use the money to apply on that note?' and Shepherd said, 'Yes; I will do that.'   And I thought that was settled, and I says, 'That satisfies me.'

"The Court: All this was after the assignment?

"A. Oh, yes; it was after that date, week or ten days, somewhere around there.

"Q. You say at that time that you told Campbell and the others there that you wanted it distinctly understood that there wasn't any money to pay the $3,000 note?

"A. I told him very distinctly—I very seldom made it as impressive as that, because I wanted it understood.   At that time I didn't tell him any more than that I told him that these Patterson sheep have not been paid for, and that we have to pay a lot of these checks that are coming for their account.

"Q. So then he asked McGaw what there was out there with which to pay this $3,000?

"A. He turned to him and asked him what there was to pay for that note, and Mr. McGaw said there was those bucks and about 300 ewes. And I says, 'What are the bucks worth?' I wanted to get a line on what they would bring, and he says, 'Around $20 apiece.'"

As evidence corroborative of that given by Burke regarding the sale of the sheep and the deposit of the proceeds thereof, Shepherd testified as follows:

"Q. On and after the 18th of October, 1911, when this so-called bill of sale was signed, what was done with the sheep mentioned in that bill of sale?

"A. The Gabel sheep?

"Q. The Gabel sheep.

"A. There was part of them sold before the bill of sale was given, and the rest were afterward sold, and the money turned in to the Bank of Kenton.

"Q. You sold them?

"A. Yes, sir.

"Q. From where?

"A. From the Sun Dial Ranch.

"Q. Did Mr. McGaw know anything about your selling them?

"A. Yes, sir.

"Q. They were sold in different lots?

"A. Yes, sir.

"Q. And with his knowledge?

"A. Yes, sir.

"Q. And the money was turned in to the Bank of Kenton?

"A. Yes, sir.

"Q. Deposited in your personal account?

"A. Yes, sir.

"Q. Were you drawing on this personal account during this time?

"A. Yes, sir.

"Q. For what purpose?

"A. For men that we hired to work with the sheep; bought certain screenings, grain, and feed, which had to be paid for—different things."

These excerpts from the transcript of testimony indicate there was some evidence of a competent nature to support the findings of the lower court, that: "On or about October 18, 1911, defendant and one William Shepherd executed and delivered to plaintiff a bill of sale of certain sheep upon the condition that said sheep should be sold, and the proceeds from the sale thereof applied to pay, among other things, this said indebtedness of the defendant. Said sheep were not delivered to plaintiff pursuant to said bill of sale, but were retained upon the ranch of the defendant, and were thereafter sold by said William Shepherd, and, by and with the consent of the defendant and said William Shepherd, proceeds from the sales thereof were applied to the payment of indebtedness other than the $3,000 for which said note was given. Thereafter plaintiff and defendant agreed that, because of the fact that the proceeds from the sale of the sheep included in said bill of sale were not applied to pay said indebtedness, the defendant would repay the same out of other moneys. At about that time, and on or about November 5, 1911, defendant executed and delivered to plaintiff its promissory note in the sum of $3,000 to evidence the continued existence of such indebtedness, which said note is the note sued upon in this case, and which note has not been paid by defendant."

Counsel for defendant argue with much force that the record shows that approximately $14,000 was realized from the sale of the sheep described in the bill of sale, and that this money was received by plaintiff, and should have been applied by it to the absorption of the total indebtedness, which aggregated $13,500, including the note in question. The testimony offered by plaintiff shows that the money resulting from the sale of the sheep was deposited in the bank to the account of Shepherd, and thereafter drawn upon by him in payment of his and the ranch's obligations. The

bank was in no position to apply the money on deposit to the credit of Shepherd to an indebtedness owing by defendant.

Whether with propriety or not, yet true, and with the knowledge and acquiescence of defendant, the money coming into Shepherd's hands was deposited by him to his credit, instead of being paid over to the bank, and for that reason it becomes of no consequence in this case to inquire into the amount of money received by Shepherd, and placed in the bank to his personal credit. A consideration of this question, if deemed important, can be invoked in an appropriate proceeding. Beyond doubt, there is some competent evidence in the record on appeal tending to show that the note inspiring this action was to be liquidated from funds apart from those resulting from a sale of the sheep particularized in the bill of sale, and that the funds so derived were not paid into the bank, but were used by Shepherd in part or in whole to prosecute the business of the ranch, and to meet the payment of obligations personal to himself and of the defendant. For these reasons, we feel constrained to affirm the judgment of the lower court.                    AFFIRMED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BEAN and MR. JUSTICE EAKIN concur.