[Filed April 6, 1891.]

## A. T. KYLE v. CHAS. G. RIPPEY ET AL.

REAL ESTATE BROKER—POWER TO SELL—PERFORMANCE—COMMISSIONS.—A real estate broker empowered to sell real property for a commission, performs his part of such contract so as to be entitled to his commission when he brings to his employer a purchaser able, ready and willing to purchase the property on the terms and conditions authorized by his employer, although the sale may not be completed

because of a defect in the title shown by the abstract furnished by the seller to such proposed purchaser.

PRINCIPAL AND AGENT—ENTIRETY OF TRANSACTION—ACCEPTANCE.—A principal cannot accept that part of his agent's acts which are to his advantage and reject another part of his acts in the same transacsion. He must either accept or reject the transaction in its entirety.

Jackson county: L. R. WEBSTER, Judge.

Plaintiff appeals. Reversed.

The questions of law argued on this appeal arise on the findings of the trial court, which are as follows: (1) On the 17th of April, 1889, the plaintiff and defendants made an agreement that if the plaintiff, who was a real-estate agent, would sell for the defendants a certain tract of land containing two hundred and fifty acres owned by them, they would pay him two hundred and fifty dollars for his services in making such sale. There was no time stated in this agreement wherein this sale was to be made. (2) On the 17th of April, 1889, the plaintiff began negotiations with one E. C. Kane for the sale of said land to him, and as the result of said negotiations Kane orally agreed to purchase the land at the price and upon the terms as set out in the written agreement, which is incorporated in the third finding of facts herein. It was admitted upon the trial that Kane was able to purchase this land. (3) Plaintiff prepared a written agreement containing the terms of the proposed sale, which the defendant signed. Kane did not sign this agreement, though he was willing to do so; afterwards thought he had signed it, and it was through an oversight and for no other reason that he did not sign it. The agreement is as follows:

### ARTICLES OF AGREEMENT FOR WARRANTY DEED.

Articles of agreement, made this 17th day of April, in the year of our Lord eighteen hundred and eighty-nine (1889), between Chas. G. Rippey and Frank Amy, both of Central Point, Jackson county, Oregon, parties of the first part, and E. C. Kane of Ashland, Jackson county, Oregon, party of the second part, witnesseth: That the said parties of the first part hereby covenant and agree that if the party of the second part shall first make the payments and perform the

covenants hereinafter mentioned, on his part to be made and performed, the said parties of the first part will convey and assure the party of the second part in fee simple, clear of all incumbrances whatsoever, by a good and sufficient warranty deed and abstract of title, the following lot, piece or parcel of ground, viz: The west two hundred and fifty (250) acres of what is known as the Watson place, and situate about one mile north of Central Point, Oregon, and further described as the two hundred and fifty acres lying adjacent to the railroad track. And the said party of the second part hereby covenants and agrees to pay to the said parties of the first part the sum of forty dollars ($40) per acre, and is to take two hundred and fifty acres, more or less, according to the following provisions, viz: If there be, when surveyed, two hundred and fifty acres on the west or northwest side of Bear creek, or further described as the portion adjacent to the railroad track, then the party of the second part agrees to take two hundred and fifty acres of land; but if it should appear from a survey in getting together two hundred and fifty acres of land that five acres or less than five acres should come on the east or northeast side of said stream, the parties of the first part agree to keep that amount out of the two hundred and fifty acres, and the party of the second part also agrees that if more than five acres should by a survey be shown to come on the east or northeast side of said stream, and being a part and parcel necessary to make the said two hundred and fifty acres, then the party of the second part agrees to accept of said land on the east or northeast side of said stream; payments to be made as follows, viz: Five hundred dollars in hand paid, the receipt whereof is hereby acknowledged, and the balance in two payments, as follows, viz: Three thousand dollars at the time of the delivery of a good and sufficient warranty deed and abstract of title to said land; six thousand five hundred dollars on or before three years from date of last above payment, interest to be paid at the rate of eight per cent per annum on deferred payments, payable annually, all in U. S. gold coin of the

United States; the latter amount, six thousand five hundred dollars, to be secured by a note and mortgage on said land, and it is understood that said mortgage shall be released on part or all of said land at any time that the party of the second part may pay the amount due. And in case of any failure of the party of the second part to make any of the payments or perform any of the covenants on his part hereby made and entered into, this contract shall, at the option of the parties of the first part, be forfeited and determined, and the party of the second part shall forfeit all payments made by him on this contract, and such payments shall be retained by said parties of the first part in full satisfaction and liquidation of all damages by them sustained, and they shall have the right to re-enter and take possession of the premises aforesaid, with all the improvements and appurtenances thereunto belonging. It is also mutually agreed that all the covenants and agreements herein contained shall extend to and be obligatory upon the heirs, administrators and assigns of the respective parties.

In evidence whereof, the parties of these presents have hereunto set their hands and seals the day and year first above written.

[SEAL.]                                    CHAS. G. RIPPEY.
[SEAL.]                                    FRANK AMY.

Done in the presence of:

C. W. AYERS.

FRANK LENNART.

A. T. KYLE, JR.

(4) As soon as the contract set out in the third finding of fact was signed by the defendants, Kane paid them five hundred dollars under said contract, which they accepted. (5) Within a short time after the execution of the agreement as set out in the third finding of fact, and the payment of the five hundred dollars thereunder as set out in the fourth finding of fact, the defendants furnished to Kane an abstract of title of the land mentioned in said agreement, prepared

by an abstractor, mutually agreed upon by Kane and the defendants. Kane submitted this abstract to his attorney, who advised him that the title of the defendants to said land was defective. (6) Within a short time after said abstract mentioned in the fifth finding of fact had been furnished, the defendants executed their warranty deed for said land to said Kane and tendered the same to him, and they were willing and ready to complete the sale of said land to him. (7) Kane refused to accept the deed so tendered to him.as found in the sixth finding of fact and refused to accept the land under said deed, and refused to complete the purchase of said land and to pay therefor as provided in the agreement, alleging as a reason for such refusal that the title of said defendants was not perfect; that he had been so advised by his attorney, and that the title was not satisfactory to him. (8) After the deed had been tendered to Kane as found in the sixth finding of fact, Kane exhibited to Chas. G. Rippey, one of the defendants, a purse containing.a quantity of gold coin, and said he was ready to pay the three thousand dollars if defendants could and would make him a good deed and give him a clear title to the land, and asked to see the deed, which Rippey thereupon showed him. After looking at the deed, he remarked that it was all right if it was not for the abstract. Rippey said that was all the deed they could make, and Kane took his money and left. (9) Kane would have accepted said land and paid for it according to the terms of said agreement set out in the third finding of fact if the title of the defendants thereto had been satisfactory to him. (10) The defendants have not paid the plaintiff the amount claimed by him in this action, nor any part thereof. As a conclusion of law, from the foregoing conclusions of fact, I find that the plaintiff is not entitled to recover in this action; but that the defendants are entitled to recover from the plaintiff their costs and disbursements therein. It is therefore ordered and adjudged that the defendants do have and recover of and from the

plaintiff their costs and disbursements herein, taxed at —— dollars and —— cents.

(Signed)                              LIONEL R. WEBSTER, Judge.

Tuesday, December 16, 1890.

*Hammond & Briggs,* for Appellant.

A broker is one whose business it is to bring parties together to bargain, or to bargain for them, in matters of trade. He is essentially a middleman. (Mecham on Agency, § 13; Anderson's Law Dict. 138.)

Real estate brokers negotiate the sale of real estate. (Mecham on Agency, § 934; Anderson's Law Dict. 139.)

To negotiate is to discuss the terms of the bargain, to endeavor to effect an agreement. (And. Law Dict. 706.)

It is no part of the duty of a real estate broker to complete a binding contract with the buyer. His duty is performed when he has procured a purchaser ready and willing to purchase on seller's terms. (Mecham on Agency, § 966; 1 Warvelle on Vend. 237; *Lockwood* v. *Rose,* 125 Ind. 588, 25 N. E. Rep. 711; *Phelps* v. *Prusch,* 83 Cal. 626; *Duffey* v. *Hobson,* 40 Cal. 244, 6 Am. Rep. 617; Fitch on R. E. Agency, 124; *Barnard* v. *Monnot,* 3 Keyes, 202; *Heinrich* v. *Korn,* 4 Daly, 74; *Geoghegan* v. *Kelly,* 11 N. Y. Sup. 704.)

A sale is a contract for the transfer of property from one person to another. (And. Law Dict. 914; Newmark on Sales, 1; 8 Wait's A. & D. 455; 2 Kent, 468.)

And this is the construction given the word "sale" when used in a broker's contract. (*Rutenberg* v. *Main,* 47 Cal. 219; *Cassady* v. *Seeley,* 69 Iowa, 509, 29 N. W. Rep. 432; *Duclos* v. *Cunningham,* 102 N. Y. 678; *Reed* v. *Reed,* 82 Pa. St. 420; *McClave* v. *Paine,* 49 N. Y. 561, 10 Am. Rep. 431.)

And where the agent brings buyer and seller together he is entitled to commission, though the property is sold on different terms, or if contract of sale is left in parol, so that it cannot be enforced. (*Potvin* v. *Curran,* 13 Neb. 302; *Reynolds* v. *Tompkins,* 23 W. Va. 229; *Plant* v. *Thompson,* 42 Kan. 669, 16 Am. St. Rep. 512.) Or if sale is defeated on account of disagreement in regard to title. (*Conklin* v. *Krakauer,* 70 Tex. 735, 11 S. W.

Rep. 117; *Crasto* v. *White*, 3 N. Y. Sup. 682.) Or has procured purchaser to enter into an agreement to pay a certain sum as damages. (2 Am. & Eng. Ency. Law, 581; *Leete* v. *Norton*, 43 Conn. 219.)

A contract of sale of real estate is valid though signed by only one party. (*Vassall* v. *Edwards*, 43 Cal. 458; Boone on Real Prop. 373; Warvelle on Abst. 295; *Burke* v. *Wilbur*, 42 Mich. 327, 3 N. W. Rep. 861; *Case T. M. Co.* v. *Smith*, 16 Or. 381; *Bradford* v. *Foster*, 87 Tenn. 4, 9 S. W. Rep. 196.)

The law will not compel a man to take a title that is subject to doubt, and Kane was warranted in thinking the title was bad. (*Turner* v. *McDonald*, 76 Cal. 177, 9 Am. St. Rep. 189; *Crasto* v. *White*, 3 N. Y. Sup. 682; *Irving* v. *Campbell*, 121 N. Y. 353.)

*Wm. M. Colvig*, and *C. W. Kahler*, for Respondent.

The findings of fact by the trial court are conclusive here upon that subject. This court should go no further than to ascertain whether the legal conclusions drawn therefrom are such as the law pronounces. (*Kyle* v. *Rippey*, 19 Or. 186; *Hallock* v. *City of Portland*, 8 Or. 29.)

The contract offered in evidence does not bind E. C. Kane, because he did not subscribe it, as required by the statute of frauds. The phraseology of our statute is peculiarly forcible. The writing is void unless subscribed by the party to be charged. Subscribe: [Lat. *sub*, under; *scribere*, to write.] To write under or beneath; to sign one's own name beneath or at the end of an instrument. (Anderson's Law Dict. 985.)

All of the cases bearing upon the questions involved here base the right of the agent to recover upon the principle that he must either sell the land or procure a "binding contract of sale," and thus place in the hands of his principal the power to compel a completion of the sale. (*Welles* v. *Smith*, 77 Wis. 81, 45 N. W. Rep. 666; *Conklin* v. *Krakauer*, 70 Tex. 735, 11 S. W. Rep. 117; *Goss* v. *Broom*, 31 Minn. 484, 18 N. W. Rep. 290; *Goss* v. *Stephens*, 32 Minn. 472, 21 N. W. Rep. 549; *Love* v. *Miller*, 53 Ind. 294, 32 Am. Rep. 522.)

The sale has never been completed, and the commission is not earned. (*Richards* v. *Jackson*, 31 Md. 250, 1 Am. Rep. 49; *Stewart* v. *Murray*, 92 Ind. 542, 47 Am. Rep. 167; *Kimberly* v. *Henderson*, 29 Md. 512; *Tombs* v. *Alexander*, 101 Mass. 255, 3 Am. Rep. 349.)

STRAHAN, C. J. — This is a second appeal. The result of the former appeal is reported in 19 Or. 186. The only question presented by this record is whether or not the court drew the correct conclusion of law from the facts found. The plaintiff was a real estate broker and was employed by the defendants to negotiate a sale of certain real estate in Jackson county, for which service he was to receive an agreed sum of $250. The plaintiff produced a purchaser, ready, able and willing to purchase the property on the terms prescribed by the defendants, and the defendants received on said contract $500, and were to furnish an abstract and make deed, etc. When the abstract was furnished it was submitted by Kane, the proposed purchaser, to his attorney for his advice, who advised him that such abstract did not show a clear title in the defendants, and for that reason alone he declined to complete the purchase after having paid $500 thereon. In construing the language of the contract between the plaintiff and defendants, its objects and purposes must not be overlooked. The plaintiff had no power by virtue of that contract to complete a sale. All he could do was to find a purchaser ready, able and willing to buy the property on the terms offered by the defendants. When he had done this he had performed his contract and was entitled to the compensation agreed upon. (16 Cent. L. J. 442; 22 Cent. L. J. 126; 26 Am. L. Reg. N. S. 109; 10 Am. L. Reg. N. S. 637; 1 Warvelle on Vend. 237; *Lockwood* v. *Rose*, 125 Ind. 588, 25 N. E. Rep. 710; *Phelps* v. *Prusch*, 83 Cal. 626; *Heinrich* v. *Korn*, 4 Daly, 74; *Rutenberg* v. *Main*, 47 Cal. 213; *Cassady* v. *Seely*, 69 Iowa, 509, 29 N. W. Rep. 432; *Phelan* v. *Gardner*, 43 Cal. 306; *Reed's Exrs.* v. *Reed*, 82 Pa. St. 420; *Duclos* v. *Cunningham*, 102 N. Y. 678; *Reynolds* v. *Tompkins*, 23 W. Va. 229; *Conklin* v. *Krakauer*, 70 Tex. 735, 11 S. W. Rep. 117; *Tombs* v. *Alexander*, 101 Mass. 255, 3 Am. Rep. 349; *Tyler* v. *Parr*, 52 Mo. 249; *Carpenter* v. *Rynders*, 52 Mo. 278; *Fox* v. *Rouse*, 47 Mich.

558; *Doty* v. *Miller*, 43 Barb. 529; *Kock* v. *Emmerling*, 22 How. 69; *McGavock* v. *Woodlief*, 20 How. 221; *Bell* v. *Kaiser*, 50 Mo. 150; *Hart* v. *Hoffman*, 44 How. Pr. 168; *Barnard* v. *Monnot*, 3 Keyes, 203.

These authorities and numerous others that might be cited conclusively establish the proposition contended for by the appellant; but it was claimed on behalf of the respondent that because the proposed purchaser did not sign the contract set out in the findings the plaintiff was not entitled to his commissions. It does not appear through whose oversight that omission occurred, nor is it material. The plaintiff brought the defendants a purchaser and they undertook to enter into a contract in writing with him and received $500 thereon. If the omission occurred by the plaintiff's fault, the defendants waived their right of objection by accepting and retaining the $500 paid under the contract;—if through their own fault, they cannot complain. (*Winpenny* v. *French*, 18 Ohio St. 469.) This is upon the well-settled rule that a principal cannot accept that portion of his agent's work that is to his advantage and repudiate the residue. He must accept it in its entirety or not at all.

It is evident from the findings that the abstract furnished by the defendants upon its face showed some defect in the defendants' title. Whether it was a real defect or one that was only apparent is not shown by the findings. If it was a real defect and the sale failed for that reason, the plaintiff would be entitled to his commission. He was not responsible for the condition of the defendants' title. If the defendants offered for sale a piece of land the title to which was not marketable it was not the plaintiff's fault. In the ordinary course of business, the title would probably not be examined until a purchaser was found, and it was the defendants' fault not to know the state of their title before they put it upon the market. On the other hand, if the defect shown by the abstract was only apparent,—some cloud that could have been readily removed,—it was the defendants' duty to have caused its removal at once, so that the

sale should not have failed for that reason. Without further examination of the subject, we are satisfied that the learned circuit judge erred in his findings of law, and that the same should have been that the plaintiff was entitled to recover against the defendants the amount sued for.

The judgment must, therefore, be reversed and the cause remanded to the court below with directions to find the law in accordance with this opinion and to render judgment thereon for the plaintiff.