Argued 29 March, decided 18 April, 1904.

## GOOD *v.* SMITH.

[76 Pac. 354.]

BROKERS—EVIDENCE OF CONVERSATIONS.

1. Conversations between a broker and the purchasers whom he has discovered, though not in the presence of the vendor, are competent in an action for commissions to show that the purchasers were ready, able, and willing to buy on the vendor's terms.

AMENDING COMPLAINT USUALLY DISCRETIONARY.

2. Allowing an amendment of the complaint in an action for breach of defendant's agreement to pay plaintiff a commission for obtaining a purchaser for his interest in property, by inserting during the trial the name of a person as having an interest in a portion of the property, is not error, the title not being in dispute or made an issue, and the amendment not changing the cause of action.

MODIFICATION OF BROKER'S CONTRACT.

3. A modification of the oral agreement between a real estate broker and the owner of land relative to its sale, made on discovery of their mistake as to who was the owner of an outstanding interest, becomes part of the contract, so that it is properly pleaded as such.

RIGHT OF BROKER TO COMMISSION.

4. The right of plaintiff, a real estate agent, to recover on his contract for sale of defendant's interest in land for a certain sum, is not affected by a change, without the defendant's knowledge, in an agreement relative to purchase of other interests.

APPEAL—FINDINGS BY COURT.
5. Where a case is tried by the court without a jury, its findings of fact, like a verdict, can be disturbed only where the evidence is insufficient as a matter of law.

From Multnomah : MELVIN C. GEORGE, Judge.

This is an action by George Good, a real estate broker, against W. K. Smith, to recover a commission. It is alleged in the complaint, in substance, that in February, 1902, the defendant was the owner of a certain tract of land in the City of Portland, known as the "Multnomah Box Factory" and also the owner of an undivided one-half interest in another tract adjoining the box factory on the south, known as "Smith Bros.' Property," the remaining one-half interest in the latter tract being owned by Walter V. Smith and the heirs at law of Preston C. Smith, deceased, in equal parts ; that defendant was also the owner of certain personal property in his own right, and, in connection with Walter V. Smith and Susan W. Smith, was the owner of certain other personal property, all situate and being upon the real property referred to ; that on or about the date mentioned the defendant employed the plaintiff as his agent for the purpose of selling his interest in the property, both real and personal, for the sum of $48,000, and agreed to pay him a commission of two and one-half per cent on such sale ; that it was understood that defendant's interest in the property was to be sold in conjunction with that of the other owners, at an aggregate price of $65,000, free from incumbrances and subject to the immediate possession of the purchaser ; that plaintiff's employment was to continue until the interest of the heirs of Preston C. Smith could be secured by proper proceedings in the probate court, or until it could be determined whether such interest could be acquired in that manner ; that plaintiff duly performed all the terms of the contract on his part, and produced a purchaser, ready, able, and willing to take on the terms agreed upon, but that defendant, in violation of his contract, refused to sell his

interest therein free and clear of all incumbrances and sub-
ject to immediate possession by the purchaser, although
the interest of the heirs of Preston C. Smith had been ac-
quired under an order of the probate court, and satisfactory
arrangements had been made with the other parties inter-
ested in the property, so that the sale could have been
completed, had defendant complied with his contract.
The answer consists of a specific denial of all the allega-
tions of the complaint except the ownership of the prop-
erty. By agreement of the parties, the cause was tried by
the court without the intervention of a jury. The court
found the facts, in substance, as alleged, and, as a conclu-
sion of law, that the plaintiff was entitled to recover from
the defendant the sum of $1,200 and his costs and disburse-
ments. From the judgment entered thereon the defendant
appeals, assigning numerous errors, which may be grouped
as follows: (1) The admission in testimony of certain con-
versations and contracts between the plaintiff and other
persons not in the presence of the defendant; (2) permit-
ting the complaint to be amended on the trial by inserting
the name of Albert T. Smith as one of the joint owners of
a part of the personal property mentioned therein; and
(3) the cause of action alleged was not proved, and the
findings are not supported, by the testimony.

AFFIRMED.

For appellant there was a brief over the name of *Cotton,
Teal & Minor*, with an oral argument by *Mr. Wirt Minor*.

For respondent there was a brief over the name of *Wil-
liams, Wood & Linthicum*, with an oral argument by *Mr.
Chas. E. S. Wood* and *Mr. Stewart B. Linthicum*.

MR. JUSTICE BEAN, after stating the facts in the forego-
ing terms, delivered the opinion of the court.

There was evidence tending to show about this state of
facts: In February, 1902, the plaintiff, who is a real estate

broker in Portland, had a customer in the Western Lumber Company for some water-front property. He called at the office of the defendant to ascertain the selling price of the property mentioned in the complaint, supposing at that time that he was the owner thereof. After some negotiations, defendant, without disclosing the fact that he was not the sole owner, agreed to sell the entire property, personal and real, for $65,000, and to pay plaintiff a commission of two and one-half per cent if the sale was effected. The plaintiff advised Mr. Ayer, the president of the lumber company, of the price at which the property could be secured; and he agreed to take it for his company, if it could be conveyed free from incumbrances, and with the right to immediate possession. About that time, however, the plaintiff learned that the defendant did not own the whole of the property, but that Walter V. Smith and the Security Savings & Trust Company each owned or had a deed for an undivided one-fourth of a certain portion of it. He thereupon entered into negotiations with Smith and the trust company, which resulted in an agreement by them to sell their interests for $8,500 each. He again called upon the defendant, and told him that the interests of the other owners of the property could not be purchased for less than $17,000, and, as the prospective buyer would not pay to exceed $65,000 for the entire property, the sale must fall through, unless he would take $48,000 for his interest. After talking the matter over at some length, the defendant finally agreed to take $48,000 for his interest in the property, to pay the plaintiff two and one-half per cent commission, and to furnish an abstract; it being understood at the time that the prospective purchaser would not take the property unless he could acquire the entire title. The plaintiff asked for a written option from the defendant, but he refused to give it, saying his word was as good as his bond. The plaintiff then wrote a memoran-

dum of the agreement or understanding had at the time, and read it over to the defendant, who said it was correct. This memorandum is as follows:

"Portland, Oregon, 14 February, 1902.

I will sell for $48,000 (forty-eight thousand dollars) my interest to the mill property and plant, and personal property, and land marked on the Lewis & Dryden atlas as belonging to the Multnomah Box Factory and Smith Bros., about 12 acres more or less, including water front, etc., and pay you a commission of two and one-half per cent for effecting sale, and I will furnish abstract of title and give title free of all incumbrances."

The result of these negotiations was reported to the prospective buyer, who agreed to take the property, and the defendant was requested by the plaintiff to furnish the abstract thereof, which he did. Upon an examination of the abstract, it was learned that, although the trust company had a deed for an undivided one-fourth interest in a part of the property, it was in fact a mortgage, and the title was in the heirs of Preston C. Smith, deceased, and therefore proceedings would have to be taken in the probate court to acquire such interest before the sale could be made. These facts were reported to Mr. Ayer, and also to Walter V. Smith and the trust company; and they all agreed to wait until a sale of the interest of the heirs of Preston C. Smith could be thus effected, or until it could be ascertained whether a title which could be conveyed to the purchaser could be secured through such proceedings.

About the 1st of March a petition for an order of sale was filed in the probate court, and such proceedings were thereafter had that on April 24th a sale was effected to the trust company, and it was confirmed on the 3d of June. Before or about the time the proceedings were instituted, the defendant was informed by the plaintiff of the condition of the title, and that the sale could not be concluded until the title was cleared up through the probate court;

and, while there is no evidence that he expressly agreed
to wait until that time, the evidence shows that he made
no objection to the delay, and did not withdraw or attempt
to withdraw his property from sale by the plaintiff.   Pend-
ing the proceedings in the probate court it was also learned
that Susie W. Smith and Albert T. Smith were each the
owners of an undivided one-fourth interest, of the value ·
of $400 each, in certain pipes in a dryhouse on the prop-
erty ; and, as defendant refused to take care of such inter-
est, it was arranged that the trust company should purchase
the interest of Susie W. Smith, and that the plaintiff would
take up the interest of Albert T. Smith out of his commis-
sion on the sale.   This arrangement was entirely satisfac-
tory to the purchaser.   After the confirmation of the sale
of the interest of the Preston C. Smith heirs by the county
court, and after arrangements satisfactory to the buyer for
the conveyance to it of the title of the purchasers and of
the other parties, the prospective buyer, through its attor-
ney, notified the defendant that it was ready and willing
to take the property, and had the money on hand with
which to pay for the same ; but the defendant in the mean-
time had leased his interest therein for two years, and
could and would not comply with his agreement, and con-
vey the property free from incumbrances, and subject to
immediate possession by the purchaser.

1. The evidence of the conversations and agreement
between the plaintiff and the prospective purchaser and
between the plaintiff and the other owners of the property
was admitted over defendant's objection on the ground
that it was hearsay.   This evidence was offered and ad-
mitted, however, not as binding on the defendant, but to
show that the plaintiff had complied with his contract,
and produced a purchaser ready and willing to take the
property upon the terms proposed by the defendant, and
for this purpose it was competent: *Leonard* v. *Roberts*,

20 Colo. 88 (36 Pac. 880); *Brumfield* v. *Potter & S. Mfg. Co.* 23 N. Y. Supp. 1025 (4 Misc. Rep. 194).

2. After the evidence for the plaintiff was all in, and it appeared that Albert T. Smith had or claimed some interest in a portion of the personal property described in the complaint, the plaintiff was permitted to amend his complaint to show that fact. This amendment did not change the cause of action set out in the complaint, and its allowance was within the discretion of the court: B. & C. Comp. § 102, and authorities noted. The cause of action sued on was the alleged breach of the agreement between the defendant and the plaintiff, by which the defendant agreed to pay the plaintiff a commission of two and one-half per cent if he could effect the sale of his interest in the property for the sum of $48,000. The title to the property was not in dispute, nor made an issue by the pleadings.

3. It is insisted that there was an entire failure of proof of the contract alleged in the complaint, and in support of this position it is argued that the memorandum made by the plaintiff on February 14, 1902, must be considered as containing all the terms of the contract. This memorandum, as we understand the evidence, was not intended by either of the parties to contain the terms of the contract. The defendant expressly refused to give a written option on the property, or to make any contract in writing concerning the same. The agreement between him and the plaintiff rests entirely in parol, and is to be deduced not only from what took place the 14th of February, but from the conversations and negotiations between the parties previous and subsequent to that date. The contract was not made at any particular time, but was the result of repeated interviews and negotiations. The writing made by the plaintiff on the 14th of February was intended for his own convenience, as a memorandum of what then occurred. It does not contain the names of parties to a contract, and

is in no sense an agreement. At that time both parties supposed that the trust company had a title which it could convey, and, when it was subsequently ascertained that this was a mistake, arrangements were made, as the evidence tends to show, to meet the contingency, and they became a part of the contract, and were properly pleaded as such.

4. Again, it is argued that after ascertaining the condition of the title, and the necessity of instituting proceedings in the probate court for a sale of the interest of the heirs of Preston C. Smith, the plaintiff entered into a new agreement with the prospective buyer and with some of the other owners of the property concerning the sale and purchase, without informing the defendant; but, if so, it was immaterial to him. His contract or agreement was for the sale of his interest for a certain sum, and it was immaterial what arrangements or agreements were made between the plaintiff and the purchaser or the other owners of the property. If the plaintiff, while the contract between him and the defendant was in force, produced a purchaser ready, able, and willing to take defendant's interest at the price agreed upon, he thereby earned his commission, whether the sale was consummated or not: *Kyle* v. *Rippey*, 20 Or. 447 (26 Pac. 308).

5. It is also argued that there never was any employment of plaintiff by defendant to sell his property, but, if so, it was terminated by mutual consent, or, if not terminated, the plaintiff did not prove the performance. These matters, if within the issues, were questions of fact; and, as there was some evidence to sustain the findings of the trial court, such findings cannot be reviewed by us. Where a cause is tried before a court without the intervention of a jury, the findings of fact stand as the verdict of a jury, and cannot be disturbed on appeal, unless it appears that the evidence upon which they were made was not sufficient,

as a matter of law, to support them: *Hicklin* v. *McClear*, 18 Or. 126 (22 Pac. 1057); *Bartel* v. *Mathias*, 19 Or. 482 (24 Pac. 918); *Fenstermacher* v. *State*, 19 Or. 504 (25 Pac. 142); *Astoria Railroad Co.* v. *Kern*, 44 Or. 538 (76 Pac. 14). The judgment of the court below will be affirmed.

AFFIRMED.

---

Decided 27 June, 1904.