Argued March 3, decided April 7, modified on rehearing July 21, 1908.

## DILLARD v. OLALLA MINING CO.

[94 Pac. 966; 96 Pac. 678.]

APPEAL—REVIEW—QUESTIONS OF FACT—NONSUIT.

1. Under a motion for nonsuit, the Supreme Court must receive the evidence adduced by plaintiffs in the most favorable light to them, making an examination of defendant's testimony unnecessary, however favorable to its contention it may appear.

CORPORATIONS—NOTICE TO OFFICER OR AGENT.

2. Notice to the officer or agent of a corporation in due course of his employment, and in respect to a matter within the scope of his authority, or apparent authority, concerning affairs of such character that it becomes his duty to communicate the information to it, is notice to the corporation whether he imparts to it such information or not.

SAME.

3. Where a mining corporation received the price demanded for its property and executed a conveyance, with presumed knowledge of the services of a broker employed by its manager and treasurer, it is within the rule that a principal cannot accept part of an agent's act inuring to its benefit and reject that portion to its injury, and is liable for the commission promised.

WITNESSES — IMPEACHMENT — COMPETENCY OF CONTRADICTING EVIDENCE.

4. In an action for commissions for the sale of the property of a mining corporation, defendant offered as a witness one who had figured conspicuously in the transaction, and introduced evidence by him that the promise to pay the commission was by him in person, and not by the corporation, and there was other evidence as to his connection with the property and sale, though it was not shown that he was an agent. With a view of impeachment, he was asked on cross-examination if he had not had a conversation with a person named, wherein he stated that the corporation justly owed the commission, and that, if he had his way, it would be paid, to which he answered that he had not. The person named was then called, and testified that he had so stated to her. *Held*, that the testimony that he had so stated was properly admitted under Section 853, B. & C. Comp., providing that a witness may be impeached by evidence that he has made at other times statements inconsistent with his testimony.

APPEAL — REVIEW — PRESUMPTIONS — INSTRUCTIONS AS TO PURPOSE OF EVIDENCE.

5. The presumption is that proper instructions were requested and given in reference to impeaching evidence, where there is nothing in the record to the contrary.

BROKERS—ACTION FOR COMMISSIONS—PLEADING AND PROOF.

6. In an action to recover commissions under a contract for the sale of land, proof that the contract was made on the exact date alleged is not required; since, while it is necessary to allege the date with convenient certainty, it is sufficient if shown to have been prior to the consummation of the sale, and within the time prescribed by the statute of limitations.

TRIAL—MOTION FOR NONSUIT.

7. On a motion for nonsuit all testimony in the record is entitled to consideration in the light most favorable to plaintiff, and, if there was sufficient evidence adduced by him to make a *prima facie* showing, the court must deny the motion, even though the counsel opposing may have viewed the evidence from a different standpoint than that taken by the court; the question for determination being not what the theory of counsel might be, but what the facts disclosed by the proof are.

From Douglas: LAWRENCE T. HARRIS, Judge.

This is an action by F. W. Dillard and G. S. Clayton, partners, against the Olalla Mining Company to recover a commission of $1,750 alleged to be due plaintiffs as real estate brokers, for the sale of certain placer mining property situated in Douglas County. From a judgment in favor of plaintiffs, defendant appeals. AFFIRMED.

For appellant there was a brief over the names of *Mr. Whitney L. Boise, Mr. John A. Buchanan* and *Mr. John T. McKee,* with oral arguments by *Mr. Boise* and *Mr. McKee.*

For respondent there was a brief over the names of *Messrs. Coshow & Rice,* with an oral argument by *Mr. Dexter Rice.*

Opinion by MR. COMMISSIONER KING.

This is an action to recover a commission of $1,750 alleged to be due plaintiffs as real estate brokers for the sale of placer mining property, and is brought here on an appeal from a judgment in plaintiffs' favor. The errors assigned, and here relied upon, are: (1) The overruling of defendant's motion for nonsuit; (2) admission in evidence of certain conversations between persons not in the presence of defendant's agents; (3) overruling the motion to set aside the verdict. The testimony offered by plaintiffs in their case in chief, tends to establish about this state of facts: About August 1, 1905, E. W. Tarr came from Ohio to Oregon in search of mining investments. After reaching Douglas County he met plaintiffs, who were engaged in the real estate business at Roseburg, and was by them informed that they could furnish the property desired. Clayton indicated he would go and see some mining property near there, which Col. J. G. Day had in charge, and, if he could get it for sale, could furnish him some good placer ground. Tarr expressed a wish to go along with him, to which Clayton assented. On their way to the mine they met Colonel Day, and, after a few preliminary remarks, Clayton made his business known, inquiring as to his chances of handling the property for him, to which Day replied to the effect that it was for sale, that it would be all right, and told him to go and see his son, Dr. J. G. Day, who was at the mill, and he would show him all about it. Clayton did as directed, and, while

looking over the property, Dr. Day said: "If you can
handle this proposition, we will pay you your commis-
sion if this deal goes"—to which Clayton responded: "All
right." A day or two later Colonel Day wrote Tarr as
follows:

"Olalla Mining Co., Olalla, Oregon, August 3, 1905.

Mr. E. W. Tarr—Dear Sir: Referring to conversa-
tion had relative to the sale of the Olalla Mining prop-.
erty, I beg to say in behalf of said company, that we will
sell the realty comprised in the Bushnell and Hoover pur-
chase, deeds of which were shown you, together with
existing water rights and pipes and giants now on the
ground for the sum of $35,000 (thirty-five thousand dol-
lars), payable as follows: Five thousand dollars within
forty days from date hereof and the balance in twelve
semi-annual installments of two thousand five hundred
dollars each, each installment to bear interest at the rate
of 6 per cent per annum from date of delivery of deeds,
and to be secured by mortgage on property conveyed.
Yours, etc.,                          J. G. Day, Treas."

After receipt of this letter, Tarr went back to Ohio
to raise the necessary funds for the venture, and returned
shortly afterwards in company with E. C. Waters, with
whom he was driven to the mine by Clayton. It appears
that Tarr had organized what is termed as the "Saca-
jawea Mining Company," intending to take one-fourth
of the stock, with the expectation that Waters would
take up the balance, and thereby furnish the funds with
which the property was to be purchased. On learning
of these plans, and that the title was not in the Saca-
jawea Mining Company, as represented by Tarr, Waters
became dissatisfied, resulting in a disagreement between
them. Tarr then gave up the project and returned to
Ohio, leaving Waters at the mine. Negotiations were
threafter continued with the latter, with the result that
within a few months the mine was sold and conveyed
to the Shirley Mining Company, organized by Waters for

52 OR.— 5

that purpose, the consideration of the sale being $35,000, of which $5,000 was paid in cash and a mortgage given on the property for the balance. It appears that Colonel Day was the treasurer and manager of the defendant company, and the person with whom all the dealings were had in its behalf, and that after Tarr left, plaintiffs continued to interest themselves in the transaction until the deal was consummated. Prior to closing the sale, and after Waters became actively interested in the purchase, Clayton asked Colonel Day how he was getting along with the proposition, etc., and during the course of their remarks he asked Clayton whom he was looking to for his commission, in response to which Clayton stated that he was looking to him. Colonel Day then inquired as to what he expected to charge, and, on being informed the commission would be 5 per cent as agreed, stated he would not pay it; that the other parties must pay the commission, referring to Tarr and Waters; and, that, if they did not, there would be no sale, and added: "I promise you to see that they put up the money. If they don't, I will not turn over any papers to them." Clayton replied that it was nothing to him how the money was obtained, but that he wanted it plainly understood that they were looking to him for their commission if the deal went through. It also appears that in a conversation between Colonel Day and Dillard, Day told him, if the deal did not go through, no commission would be paid, but, if successful, plaintiffs would get their commission. After the deal was closed, Day remarked to one of the plaintiffs that he would be around the next day and settle up, and requested them to specify the amount due which they claimed for their services, and, when informed it would be 5 per cent, replied that he would not pay it, but said he would pay them such money as they were out, with small wages. To this plaintiffs would not

accede, whereupon plaintiffs were informed that they would get nothing, resulting in this action.

1. In support of their motion for nonsuit, counsel for appellant urge that no contract for the sale of property was shown to have been entered into between the Olalla Mining Company and the plaintiffs, and that whatever arrangement might have been made with Colonel Day in respect thereto was not binding on the company; that, if plaintiffs were employed at all, it was to sell the mine to Tarr, and not to any one else, but, when the option given Tarr had expired, any sale made thereafter could not inure to the benefit of plaintiffs; and that the sale to the company organized by Waters was a separate and distinct transaction, for which no commission was agreed to be paid. This contention overlooks the distinguishing feature, that it could make no difference what arrangements might have been made in the first instance, or whether in the beginning an agreement was entered into between the defendant company and plaintiffs or not, nor as to how far the first agreement extended; and these matters are mentioned here only as a matter of history leading up to the points involved, and as circumstances which the jury were entitled to take into consideration in determining whether any subsequent agreement, express or implied, was made with defendant or its agents.

It is unquestioned that plaintiffs were instrumental in interesting Tarr in the proposition; that Tarr went east, and as a means of furnishing money with which to take up the property brought Waters with him; that plaintiffs took Tarr and Waters to the mine, and opened up negotiations with a view of purchasing; and that, while Colonel Day was agent for the company and knew that plaintiffs were to get a commission or expected one, no objections were made thereto, nor was their right in this respect questioned until after the sale was consummated. Plaintiffs brought the buyer and seller together. The sale

was made to Waters for his company, and defendant received through him from such company the price asked; and the testimony strongly implies a promise on the part of defendant to pay the commission. In fact, the manager had said it would be paid, and that he would see that plaintiffs received their commission. It is sufficiently clear that he was purporting to speak for his company, and was endeavoring to retain plaintiffs' assistance by leading them to believe they were in no danger of losing their commission. The testimony on these various points was at least sufficient from which the jury might draw such inference, and accordingly a question for their consideration. Under the motion for nonsuit, we must receive the evidence adduced by plaintiffs in the most favorable light to them, making an examination of the testimony of the defense unnecessary, however favorable to its contention it might appear.

2. It is maintained that, even if it should be held that there was sufficient evidence from which a contract or agreement between Colonel Day and the plaintiffs may be implied, it was not such a contract as would bind the company. Throughout the entire transaction he was the manager and treasurer of defendant. His testimony discloses that the corporation abided by everything he did. It is a well-settled principle that notice to an officer or agent of a corporation, in due course of his employment, and in respect to a matter within the scope of his authority, or apparent authority, concerning affairs of such character that it becomes his duty to communicate the information to it, is notice to the corporation, whether he imparts to it such information or not: Clark & Marshall, Corporations, §§ 718, 719; *Wood* v. *Rayburn*, 18 Or. 1 (22 Pac. 521) ; *Rayburn* v. *Davisson*, 22 Or. 242 (29 Pac. 738) ; *McLeod* v. *Despain*, 49 Or. 536 (92 Pac. 1088).

3. Defendant, therefore, having received the price demanded, and having executed the conveyance to the prop-

erty with the presumed knowledge of plaintiffs' relationship to the transaction, brought itself within the well-established rule that a principal cannot accept the part of an agent's acts inuring to his benefit, and in the same transaction reject that portion appearing to his injury. The burdens thereof must accompany the benefits; and, whatever may be held in other jurisdictions, this rule in this state is held to be applicable to sales of realty as in other business dealings: *Kyle* v. *Rippey*, 20 Or. 446 (26 Pac. 308); *McLeod* v. *Despain*, 49 Or. 536 (92 Pac. 1088, 1091).

4. The next point urged relates to the admission of testimony. After answering that she had a conversation with Dr. Day at her home concerning the controversy here involved, Mrs. J. A. Byron testified:

Q. What was that conversation?

A. I asked him how the trial turned out, and he said that it was postponed. He said: "We agreed to pay the commission, and, if I had my way about it, I would see that they got it." My sister, Mrs. Frank Pickett, heard him.

Q. You were talking about this case?

A. Yes. He did not mention any names. He said: "We agreed to pay the commission, and, if I had my way about it, I would see that they got it."

This testimony was admitted over defendant's objection, and its admission constitutes one of the errors assigned. The record discloses that throughout the transaction Dr. Day figured very conspicuously in the deal, and was the person to whom plaintiffs were first sent by the manager for an inspection of the contemplated purchase, and his testimony was to the effect that he had made some kind of arrangement with Tarr, whereupon he was to have an interest in the Sacajawea Company, and had agreed to see that plaintiffs received their commission. It is obvious that this testimony was offered by defendant for the purpose of showing that the prom-

ise to pay the commission was by Dr. Day in person, and not for the company, and for this reason defendant was not intended to be held for the claim; and there is some other evidence bearing on his connection with the property and sale, although it is not shown that he was its agent in any capacity or authorized to act for it. With a view of impeachment, he was asked on cross-examination, without objection, if he did not have a conversation with Mrs. Byron at her home in Roseburg, a short time after the case first came up for trial, she and the witness being present, to which he replied that the Olalla Mining Company justly owed this commission to plaintiffs, and that, if he had his way about it, the claim would be paid, which the witness answered in the negative. Mrs. Byron was then called, in rebuttal, and testified as indicated. That this testimony was properly admitted we think clearly settled by our statute and by decisions of this court: B. & C. Comp. § 853; *State* v. *Fitzhugh*, 2 Or. 227; *Langford* v. *Jones*, 18 Or. 307, 326 (22 Pac. 1064).

5. If, however, the objection made to this evidence was intended to prevent Dr. Day's statements from binding defendant, for the reason that his relationship to the property was not such as to make defendant company responsible, and if the testimony was intended for that purpose, it was only hearsay, as to which no objection was made; the objections having been only to the competency, relevancy, and materiality of the inquiry: 9 Ency. Ev. pp. 71, 74. But it is obvious that the answers elicited by the inquiry were intended for impeachment only, and, there being nothing in the record to the contrary, it will be presumed that proper instructions were requested and given in reference thereto.

Finding the errors assigned to be untenable, it follows that the judgment of the court below should be affirmed.

AFFIRMED.

Decided July 21, 1908.

ON PETITION FOR REHEARING.

[96 Pac. 678.]

Opinion by MR. COMMISSIONER KING.

It is contended that in our former opinion we held "that a recovery might be had upon a 'subsequent agreement, express or implied,' to the agreement alleged in the complaint," which holding, if as contended, is error. The amended complaint, however, upon which the cause was tried, omitting formal parts, avers:

"That defendant is a corporation, and on or about August 1, 1905, was the owner of certain mining property in Douglas County, Oregon; that on or about said date defendant employed plaintiffs to secure a purchaser for said mining property, and that in pursuance of said employment, plaintiffs found a purchaser for said property, and defendant sold the same to said purchaser on or about January. 20, 1906, for the sum of $35,000; that defendant agreed to pay plaintiffs a reasonable compensation for securing said purchaser; and that $1,750 is a reasonable compensation for said services," etc. Without testing the complaint by demurrer or motion, an answer was filed denying all the averments, except "that defendant was a corporation and owner of the mining property described in the amended complaint at the date therein alleged"; and upon issues thus formed the cause was tried.

6. It will be observed that the complaint does not attempt to give a detailed statement of the facts, or to state with whom, or how, the contract was made; nor was it necessary to do so: 6 Enc. Pl. & Pr. 263. We held there was evidence adduced tending to prove the employment of plaintiffs in the capacity alleged, the sale of the mining property of defendant, and the reasonableness of the commission, which the jury fixed at the sum demanded, all of which is in conformity with plaintiffs' averments.

We know of no rule, nor is our attention called to any authority, requiring proof, in such cases, that the contract of employment was made on the exact date given in the complaint. While necessary to allege with convenient certainty, it is sufficient if shown to have been prior to the consummation of the sale and within the time prescribed by the statute of limitations: *Quigley* v. *McKee*, 12 Or. 22, 25 (5 Pac. 347: 53 Am. Rep. 320) ; *Kitchen* v. *Holmes*, 42 Or. 252, 256 (70 Pac. 830). Even if true, as suggested, that counsel may have insisted that the first steps taken, and conversation had at the inception of the transaction, constituted such a contract of employment, as to entitle them to the commission claimed, the proof relative to all dealings had was properly before the jury, and in passing upon the motion for nonsuit all testimony in the record was entitled to consideration in the light most favorable to plaintiffs. And it is elementary that, if there was sufficient evidence adduced by them to make a *prima facie* showing, it was incumbent upon the court to deny the motion, even though the counsel opposing may have viewed the evidence from a different standpoint than that taken by the court. The question for determination, under such circumstances, is not what the theory of counsel might be, but what the facts disclosed by the proof are. In this connection it is also urged that the property sold, upon which the commission is claimed, is different from that described in the complaint, which alleged oversight is assigned as error, but how this could be possible when the property was not even attempted to be described therein does not appear.

Much space is given in the petition to a rediscussion of the evidence, in reference to which it is urged that we are in error in our narrative of the facts, a sample of which is that we should have said $10,000 was paid on the purchase price of the property at the time of the sale in place of "$5,000 cash"; but this, like other details to which our attention is directed, is immaterial, for which.

reason we have not re-examined the record to test the
accuracy thereof.  It can make no difference, so far as
defendant's liability to plaintiffs is concerned, whether
the smaller or larger sum stated was paid, or the entire
purchase price, for that matter.  In fact, it would seem
that the larger the sum received by defendant, as a result
of plaintiffs bringing defendant and the purchaser to-
gether, the better the reason for paying the commission.

It is next contended, as formerly, that Col. Day was
not acting within the scope of his authority in his alleged
transactions with plaintiffs; and many authorities are.
cited in support thereof.  This feature has been fully
considered, and, as stated in our former opinion, what-
ever may be the rule elsewhere, it is settled in this State
that a person cannot acquiesce in, and receive the benefits
of, his agent's acts, while such agent was acting under an
apparent authority concerning matters with respect to
which it became his duty to inform his employer, and at
the same time be relieved of the burdens thereof, whether
the transaction concerns the sale of realty or other busi-
ness dealings: *Coleman* v. *Stark*, 1 Or. 115, 118; *Wood*
v. *Rayburn*, 18 Or. 1 (22 Pac. 521) ; *Kyle* v. *Rippey*, 20 Or.
446, 454 (26 Pac. 308) ; *Rayburn* v. *Davisson*, 22 Or. 242
(29 Pac. 738) ; *La Grande Nat. Bank* v. *Blum*, 27 Or. 215
(41 Pac. 659) ; *Dight* v. *Chapman*, 44 Or. 265, 278 (75
Pac. 585 : 65 L. R. A. 793) ; *Good* v. *Smith*, 44 Or. 578,
585 (76 Pac. 354) ; *McLeod* v. *Despain*, 49 Or. 536, 563
(90 Pac. 492, 498 : 92 Pac. 1088, 1091).

7. After a re-examination into the admissibility of the
testimony of Mrs. Byron, including the purpose for which
it was offered, we are impelled to adhere to our former
conclusion—that the answers thus elicited were for the
purpose of impeaching the testimony of Dr. Day, indi-
cated in the opinion, and without doubt were admissible
for such purpose.  Our holding in this respect is in har-
mony both with the letter and spirit of Section 853, B. &
C. Comp., and other authorities cited, to which may be

added *State* v. *Jennings,* 48 Or. 483, 489 (87 Pac. 524: 89 Pac. 421). And, as to our observation concerning the sufficiency of the objection, in the event the testimony was offered for the other purpose suggested, it was not essential to a decision of the points involved, for which reason, as well as that there appears to be some doubt as to the correctness of the rule there announced, although sustained by eminent authority (8 Enc. Pl. & Pr. 218-228; *State* v. *Sexton,* 10 S. D. 127: 72 N. W. 84), the original opinion may be amended by striking out all of that part thereof beginning with the words, "If, however, the objections made to this evidence was intended," etc., in next to the last paragraph, to, and including, the first word of the sentence following.

With this modification of our former opinion, the petition for rehearing should be denied.

MODIFIED: REHEARING DENIED.