[Filed April 23, 1888.]

# GEORGE THOMPSON, RESPONDENT, v. IRA HAWLEY, APPELLANT.

SECOND APPEAL—LAW OF THE CASE.—Upon a second appeal, if the facts are the same, the former opinion is the *law of the case*, and must govern it in all of its subsequent stages.

SPECIFIC PERFORMANCE—COMPENSATION IN DAMAGES.—When the defendant inherited an equitable interest in lands, and was entitled to have his title perfected upon the payment of one hundred and sixty dollars, and then sells said lands for eighteen hundreds dollars, and agrees to *perfect the title* and refuses to do it, the purchaser may elect to specifically enforce the agreement by acquiring the defendant's equity through the decree, and have compensation in damages for the amount necessary to be paid to perfect the title.

APPEAL from Lake County.

*J. J. Walton,* for Appellant.

*C. A. Cogswell,* for Respondent.

STRAHAN, J.—The question of law upon which the rights of the parties mainly depend was settled on the former appeal. (*Thompson* v. *Hawley,* 14 Or. 199.) We there held that "by the terms of the contract pleaded by the defendant, he was bound to make a good and sufficient conveyance with full warranty *only* against my heirs, executors, and administrators. . If this was the agreement it bound the defendant to convey such title as he had, and such conveyance must contain the covenants contained in the writing. On the other hand, if the agreement is as set out in the complaint, it can only be performed by the vendor's making and delivering a deed that shall vest the fee in the vendee. Such contract requires a conveyance that shall be good in substance, and that shall vest in the grantee a fee-simple in the land conveyed." After the cause was remanded the pleadings were amended, but the issues made present the same questions of law, so that nothing further need be said on this branch of the case, for the reason the former opinion must govern. But the evidence has been taken in writing, and we must now consider the question of fact as to which one of the writings set out in the pleadings contains the terms of the con-

tract made between the parties on the twenty-fifth day of June, 1880.

The plaintiff has submitted in evidence the following contract, made between himself and the defendant on that day :—

> { "SILVER LAKE, LAKE COUNTY,
> {      OREGON, June 25, 1880.
>
> "This will certify that I have this day sold my band of sheep, numbering (1,505) one thousand five hundred and five head of old sheep. The lambs to be counted after they get well from altering for $1.50 per head. Also the hay ranch belonging to the estate of Lyman L. Hawley. And I hereby agree and bind myself to make the best title that I, as Lyman L. Hawley's heir, can make, *and perfect the same* for the sum of ($1,800) eighteen hundred dollars; the kitchen and household furniture to go with the ranch. Also, two head of milk cows with calves, one horse, two wagons, set of harness, mowing machine, hay rake and forks, and other tools belonging to the ranch; also two thousand five hundred poles that has been cut upon Rock Creek. Thompson to pay two thousand dollars down, and to have four years to pay balance; interest to be paid yearly, at the rate of ten per cent per annum.
>
> (Signed,)        "IRA HAWLEY."

It is conceded by the defendant that this is the original writing signed by him at the time the contract was made, and as a memorandum thereof; but it is contended by the defendant he afterwards went to Lakeview and procured the writing set out in *Thompson* v. *Hawley, supra,* at page 204, to be prepared, signed it and delivered it to the plaintiff, and that it thereby superseded the former writing, or is to be regarded as a modification thereof.

The plaintiff gives the following account of this second writing: "After having made those notes to Mr. Hawley, he pulled a paper out of his pocket, stating that he had been down to Lakeview and got a *regular lawyer* to draw up a bond binding him to deed me that land. I said I did not look for anything now, Mr. Hawley, until after being paid in full. He said that

I had done so well by him, paying him his own price for every-thing, that he would just give me a *good bond* for fear that con-tract or paper I drew up was not binding enough on him.  I said I supposed the paper I drew up was plenty good enough. I asked him what kind of a bond he had.   He said you read it. I took it and glanced over it, my eyes being too bad to finish it; I handed it back to Mr. Hawley, saying: 'If you can find anything binding you to deed me that land, you show it to me.' I said further: 'I can see nothing in that paper about your perfecting the title.'   He said: 'Does it not?'   I said: "Not that I can find.'   He said: 'I have already bound myself to do that in the one you drew up.'   I then said, 'Mr. Hawley, I am not a party to this bond at all, and had nothing to do with it; it is your own get up, and you may as well keep it.'   He said that he hadn't got it up himself; that he simply told his lawyer to draw up a bond for a deed, and said, if that is not a good bond giving you a perfect title, I will make you one when I have been paid in full.   When he got up to leave he said: 'This paper is no good to me and I will just leave it here and you can do as you please with it, but I would not destroy it if I was in your place, for fear the other paper you drawed up might get lost, so as you will have something to show if you don't destroy this.'   I told him if the other paper was lost I would *rather* depend upon verbal testimony entirely, as I did not consider that paper worth the paper it was written on.   I said I would not destroy it, but allow it to live as a curiosity; that is all about it."

"Question.   State if you ever accepted this bond as evidence of contract between yourself and Mr. Hawley?

"Answer.   Quite the contrary; I told him I held him to the paper I drawed up, being it called for a perfect title.   That I paid him two thousand dollars on the strength of the paper drawed up by me on the 25th of June, and I would pay him the balance of the money on that paper or contract, and I wanted him to clearly understand now, that I would not be bound by that bond in any way whatever, and asked him if he considered it any account, one way or the other. to take it with him."

Our claim is that the defendant having claimed a modification of the contract, he must establish this by a preponderance of evidence, and as this is such an extraordinary modification, we think the evidence should be quite clear.  The corroborating evidence which the plaintiff submits, as well as the facts surrounding the transaction, I think tend to support his contention and turn the scale in his favor on this question of fact.  No reason is apparent why this second contract was prepared; it varies from the first writing in a very essential particular, and the plaintiff could have had no object or motive in accepting such contract.  Besides several of the witnesses for the plaintiff testify to admissions and declarations of the defendant, to the effect that he was to procure the State's title before deeding the land to Thompson.

In addition to this, it does not appear probable that the plaintiff would pay eighteen hundred dollars for the mere privilege of purchasing from the State its claim to the swamp land in question.  But more than this, the wagon, harness, etc., which the defendant now says he threw in to induce the plaintiff to agree to take the chances on the State's title, and to procure it himself, are all enumerated in the contract of June 25th, by which it appears that the plaintiff purchased them for the consideration therein specified.  No fraud is alleged by the defendant, nor is it pretended anywhere that the agreement of June 25th was ever changed or modified by a new or other agreement.  Of course the preparation and signing of another writing by the defendant, and leaving it at Mr. Thompson's, and to which he never assented, would not constitute such change or modification. I am therefore of the opinion that the writing signed by the defendant on the 25th of June contains the terms of the contract of that date respecting the land in controversy, and is the one which must be enforced in this suit.

The case then briefly stated seems to be this:  That Lyman Hawley in his lifetime entered into a contract with the State of Oregon for the purchase of the land in controversy from the State, which lands are admitted to be swamp; that Lyman Hawley died, leaving the defendant, his father, as his only

heir at law; that the defendant entered into an agreement in writing with the plaintiff, whereby he agreed and bound himself to make the best title that he, as Lyman Hawley's heir, could make, and *perfect the same* for the sum of eighteen hundred dollars. The defendant has not yet *perfected* said title by paying his eighty per cent of the purchase money still due the State on Lyman L. Hawley's purchase; but by the agreement in question the defendant has *in equity* succeeded to all the rights and interest of Lyman L. Hawley in the land in controversy, and is entitled, if the defendant refuses to pay the balance of the purchase money which is due from the purchaser to the State, to pay the same himself, and thus acquire a perfect legal title. But to do this he must pay money which the defendant was bound to pay in order to perform his agreement. To that extent he is damaged by the default of the defendant, and for which he is entitled to compensation in this suit. (Waterman on Specific Performance, §§ 503–505.)

The proper decree will therefore be entered for the specific enforcement of the contract of June 25, 1880, mentioned in the complaint, and that the plaintiff recover of the defendant one hundred and sixty dollars, which is the balance of the purchase money due the State for the land in question, and that the respondent recover his costs and disbursements in this court.